STATE OF NORTH CAROLINA v. ROBERT EARL DUNN, DEFENDANT

No. COA01-487

(Filed 19 November 2002)

## 1. Discovery— laboratory protocols—drug testing

The trial court erred in a selling heroin, delivering heroin, and possessing heroin with intent to sell and deliver case by failing to require the State to provide defendant discovery information under N.C.G.S. § 15A-903(e) pertaining to laboratory protocols, incidences of false positive results, quality control and quality assurance, and proficiency tests of the State Bureau of Investigation (SBI) laboratory when SBI chemists tested the substance that the State alleged to be heroin four times and only two of those tests returned a positive result for heroin, because allowing the discovery would enhance preparation for cross-examination and permit both sides to assess the strengths and weaknesses of this aspect of the evidence.

## 2. Constitutional Law; Discovery— testimony of defendant's consulting experts—effective assistance of counsel—work product privilege

The trial court violated a defendant's right to effective assistance of counsel and the related work product privilege in a selling heroin, delivering heroin, and possessing heroin with intent to sell and deliver case by admitting testimony concerning laboratory tests and results of a testing facility retained by defendant to independently test the substance at issue and defendant is

1

**STATE v. DUNN**

[154 N.C. App. 1 (2002)]

entitled to a new trial, because: (1) the results and reports of tests performed by the witnesses are protected from pretrial discovery if defendant does not intend to introduce results of the testing facility's tests or to call the testers as witnesses at trial, N.C.G.S. § 15A-905(b); (2) the work product doctrine operates not only to protect the reports and potential testimony of nontestifying consulting experts, but also to increase the information available to the trier of fact by encouraging the attorney to seek, on his own, information about the case that he could not obtain from his adversary through the discovery process; (3) although the work product doctrine is a qualified privilege, not an absolute one, the State may defeat the privilege by showing a special need for the testimony of defendant's consultative expert; (4) in regard to defendant's right to effective assistance of counsel, the attorney must be free to make an informed judgment with respect to the best course for the defense without the inhibition of creating a potential government witness; and (5) even when the defense waives its Sixth Amendment protection of the report of a consultative expert by announcing its intention to use the report at trial, it does not waive its right to control the testimonial use of the expert and the expert remains unavailable to the State as a witness.

Appeal by defendant from judgment entered 1 November 2000 by Judge Henry W. Hight, Jr. in Durham County Superior Court. Heard in the Court of Appeals 14 February 2002.

*Attorney General Roy Cooper, by Assistant Attorney General John G. Barnwell, for the State.*

*Lisa Anderson Williams, for defendant-appellant.*

HUDSON, Judge.

Defendant was convicted on 25 October 2000 of selling heroin, delivering heroin, and possessing heroin with the intent to sell and deliver it. He was sentenced to a minimum term of 168 months and a maximum term of 211 months. Defendant appeals his convictions.

The pertinent facts are as follows: Officer W.M. Evans, an investigator with the Durham Police Department, testified at defendant's trial that while he was working in the street crimes unit he participated in a drug bust on 30 April 1999. Officer Evans operated an unmarked "white panel van" equipped with audio and visual surveil-

lance equipment on Elm and Hopkins Streets in Durham as part of an ongoing investigation regarding drug activity. On the evening at issue, Officer Evans pulled up to the corner, rolled down his window, and a man, later identified as the defendant, approached his window. Officer Evans asked defendant for a "bag of boy;" "[b]oy is a street term for heroin." Defendant told Officer Evans "[f]ollow me," then defendant "began to walk west on Hopkins Street." The officer followed him in the van and defendant walked behind the Greater Zion Wall Baptist Church on Hopkins Street. Defendant returned to the van and gave Officer Evans "a glassine bag with a red sun on it;" Officer Evans gave defendant twenty-five dollars in return. Officer Evans drove away, made notes of what happened, put the glassine bag in a plastic evidence bag, and described defendant to other police units in the area. He then returned to headquarters, reviewed the surveillance video, and was contacted by Investigator Mike Berendson, a Durham Police Officer familiar with local drug dealers and users, when defendant was apprehended.

Officer Evans testified that he tested the substance bought from defendant with a "Marquis test system." He explained that the Marquis test system is "an ampule [the police] have to test cocaine, marijuana, heroin, you know, different things. You break the ampule open, it has a little solution in there. You would take a paper clip, stick i[t] into the bag of heroin, get a little bit of residue on there, stick it into the bag, and if it turns purple, it means it's tested positive for heroin." The substance at issue here tested negative and Officer Evans sent the remaining portion to the State Bureau of Investigation (the "SBI") lab for further testing. Officer Evans explained that one possible reason that the substance tested negative for heroin was that "[h]eroin on the street is only 30 to 35 percent [pure]" and that the other sixty-five to seventy percent of a bag of heroin sold on the street customarily is made up of manitol, a cutting agent. Manitol does not test positive in the Marquis test.

After the SBI lab finished testing the substance in the glassine bag, Officer Evans picked up the remains of the substance and, pursuant to the court's instructions, took it to Lab Corp in Burlington, North Carolina, to be tested at the defendant's request. Officer Evans retrieved the remaining portion of the substance from Lab Corp and returned it to the property room at the police station in Durham, where it stayed until trial.

In response to questions concerning possible identity confusion between defendant and his brother, Officer Berendson testified that

he was familiar with both brothers. He confirmed his identification of defendant as the person who sold a substance to Officer Evans. Other employees of the Durham Police Department also testified to establish the chain of custody for the substance recovered in the drug buy.

Special Agent Wendy Cook, forensic drug analyst for the SBI, testified that the substance purchased from defendant tested negative for heroin twice, and positive for heroin twice. Cook did not conduct all of the tests herself, but read the results as indicating that less than one-tenth of a gram of heroin was present in the sample. She explained that this procedure (reading tests performed by others) was standard procedure at the SBI laboratory. During voir dire, Agent Cook acknowledged that most of the documents requested by defendant as additional discovery existed and were available. The State did not provide these documents to defendant.

Over the objection of defendant, the State called Ms. Gail Ingold and Ms. Mitzi Walker to testify. Both were employed by Lab Corp in Burlington, which had been retained by the defendant to perform independent testing on the substance. Ms. Ingold testified to the chain of custody of the sample she received from Officer Evans. Ms. Walker, a chemist, testified that her analysis "showed it to be at least 90 percent or greater match for heroin."

The jury convicted defendant of selling heroin, delivering heroin, and possession of heroin with intent to sell or deliver it. After the verdict was entered, the same jury heard evidence and convicted defendant of the status of habitual felon pursuant to N.C. Gen. Stat. § 14-7.1 (1999). The court then sentenced defendant to a minimum of 168 months and a maximum of 211 months in prison. Defendant appealed.

[1] In his first assignment of error, defendant contends that the trial court erred "in failing to require the State to provide [defendant] discovery information pertaining to laboratory protocols, incidences of false positive results, quality control and quality assurance, and proficiency tests of the State Bureau of Investigation laboratory when State Bureau of Investigation chemists tested the substance that the State alleged to be heroin four times and only two of those tests returned a positive result for heroin." Defendant filed a Motion for Discovery on 28 March 2000 requesting documents from SBI agents who tested the substance bought from defendant. He requested "access to and a copy of all case notes . . . describing, without limitation, the details of the samples received, and the condition thereof, as well as the full experimental records of the test(s) performed."

Defendant also asked for laboratory protocol documents, any reports documenting "false positives" in SBI laboratory results, and information about the credentials of the individuals who tested the substance on behalf of the State. Eleven pages of laboratory notes from the SBI are included in the record. The record contains no reports concerning false positives at the SBI laboratory, laboratory protocol documents, or credentials of the laboratory employees involved in this case, which apparently were not given to defendant.

The defendant's right to discovery of exculpatory information stems from the Constitution. *See Brady v. Maryland*, 373 U.S. 83, 10 L.Ed. 2d 215 (1963). In *Brady*, the Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. at 87, 10 L.Ed. 2d at 218. Therefore, a defendant is entitled to discovery from the prosecutor of all information within the scope of *Brady*. However, our courts have noted that,

> [w]ith the exception of evidence falling within the realm of the *Brady* rule, . . . there is no general right to discovery in criminal cases under the United States Constitution, thus a state does not violate the Due Process Clause of the Federal Constitution when it fails to grant pretrial disclosure of material relevant to defense preparation but not exculpatory.

*State v. Cunningham*, 108 N.C. App. 185, 195, 423 S.E.2d 802, 808 (1992).

In North Carolina, the General Assembly has expanded the defendant's right to discovery through the enactment of N.C. Gen. Stat. § 15A-903. Subsection (e) provides that, "[u]pon motion of the defendant, the court must order the prosecutor to provide a copy of or to permit the defendant to inspect and copy or photograph results or reports of physical or mental examination or of tests, measurements or experiments made in connection with the case . . . ." N.C. Gen. Stat. § 15A-903(e) (1999). Defendant contends that the discovery he sought before trial would have given him and his attorney the ability to understand the test results received from the SBI laboratory, would have helped explain why the substance tested negative in two of the four SBI tests, why the SBI laboratory technicians ruled out the negative tests, and how often the SBI laboratory returns false positives on similar substances. The trial court denied defendant's motion

for additional discovery, and the State provided defendant with the eleven pages of tests and laboratory results which are included in the record.

Defendant relies upon *Cunningham* as authority for his argument that the trial court erred in refusing his request for the additional documents. In *Cunningham*, the defendant received through discovery only an SBI laboratory report, which was "limited to a statement that the material analyzed contained cocaine, reveals only the ultimate result of the numerous tests performed . . . ." 108 N.C. App. at 196, 423 S.E.2d at 809. Explaining that this did not "enable defendant's counsel to determine what tests were performed and whether the testing was appropriate, or to become familiar with the test procedures," in *Cunningham*, the Court held that this additional information was discoverable under N.C. Gen. Stat. § 15A-903(e), and that the trial court erred. *See id.* There we explained that

> Because of the extraordinarily high probative value generally assigned by jurors to expert testimony, of the need for intensive trial preparation due to the difficulty involved in the cross-examination of expert witnesses, and in the inequality of investigative resources between prosecution and defense regarding evidence which must be analyzed in a laboratory, federal Rule 16 has been construed to provide criminal defendants with broad pretrial access to a wide array of medical, scientific, and other materials obtained by or prepared for the prosecution *which are material to the preparation of the defense* or are intended for use by the government in its case in chief.

*Id.* at 194, 423 S.E.2d 807-8. We concluded that there was no evidence the information sought was exculpatory, and that the error was harmless beyond a reasonable doubt in light of "overwhelming evidence of defendant's guilt."

Since *Cunningham*, there have been few cases in North Carolina addressing the scope of material the State must provide under 15A-903(e) beyond the bare results of laboratory tests. *See State v. Bartlett*, 130 N.C. App. 79, 502 S.E.2d 53 (1998). In *Bartlett* we granted defendant a new trial, where the State refused to provide "alco-sensor" test results in response to a discovery request under N.C. Gen. Stat. § 15A-903(e). "Admission of the alco-sensor test results was error because they were erroneously admitted as substantive evidence and the State violated the discovery rules." *Id.* 130 N.C. App. at 84. *Cf. State v. Brewington*, 352 N.C. 489, 532 S.E.2d 496 (2000), *cert.*

*denied*, 531 U.S. 1165, 148 L.Ed.2d 992 (2001) (holding that polygraph results, which are subjective and unreliable, do not fall within the scope of statute providing for discovery of results or reports of tests, measurements or experiments made in connection with the case); *State v. East*, 345 N.C. 535, 481 S.E.2d 652 (1997), *cert. denied*, 522 U.S. 918, 139 L.Ed.2d 236 (1997) (holding that there is nothing in statute authorizing discovery by the state, N.C. Gen. Stat. § 15A-905, which limits results or reports of physical and mental examinations of defendant to production of existing written reports). Because the cases are so sparse, we have expanded our research.

The Official Commentary to N.C. Gen. Stat. § 15A-903 indicates that it was patterned after Federal Rule of Criminal Procedure 16. *See* N.C. Gen. Stat. § 15A-903, Official Commentary; *see, also, State v. Brown*, 306 N.C. 151, 163, 293 S.E.2d 569, 578, *cert. denied*, 459 U.S. 1080, 74 L.Ed. 2d. 642 (1982). Although we are not bound by the lower federal courts, we look to cases interpreting Rule 16 for guidance in our interpretation of N.C. Gen. Stat. 15A-903. *Cf. Brewer v. Harris*, 279 N.C. 288, 292, 182 S.E.2d 345, 347 (1971), *affirmed*, 279 N.C. 288, 182 S.E.2d 345 (1971) (because federal rules are the source of the North Carolina Rules of Civil Procedure, we look to the decisions of federal jurisdictions for guidance). We also examine cases from other states interpreting discovery statutes similar to our own.

In *United States v. Wilkerson*, the defendant asked for very similar information to what defendant sought here: (a) written records, notes and documentation pertaining to the chain of evidence and testing; (b) complete technical procedures, including description of the testing process, criteria for review of data, quality assurance, and standardization; (c) quality assurance programs; (d) internal quality assurance policies and procedures and (e) information regarding the occurrence or frequency of "false positive" results. *See United States v. Wilkerson*, 189 F.R.D 14, 15 (D.Mass. 1999). The prosecution agreed that it would turn over the materials sought in (c), (d) and (e). The court determined that while the working notes of the lab and some of the procedural data were protected as the internal "working papers of the examiner," a detailed summary of the tests was necessary to reveal the examiner's "opinions, the bases and the reasons for those opinions." *Id.* at 16; *see, also,* Fed. R. Crim. P. 16(a)(2) and 16(a)(1)(E). The court concluded that such a summary must include:

> a description of the sample received, what the examiner did to ready the sample for the test(s), a description of the test(s) (i.e.,

how the test(s) work(s) to detect the drugs), what physically was done with the sample during the test(s), what physically occurred to the sample as a result of the test(s), what occurred which led the examiner to his or her conclusion that the substance was cocaine, any steps taken to review the test(s) results to insure accuracy, any other action with respect to the sample or the testing, and what the examiner did with the sample after examination.

*Id.* at 16-17. While the material ordered to be disclosed is very similar to that sought in the case at hand, the *Wilkerson* court based its decision upon Federal Rule of Criminal Procedure 16(a)(1)(E), a provision in the federal discovery rule which goes beyond N.C. Gen. Stat. § 15A-903.

In *United States v. Green,* the court ordered the government to "turn over to the defendants not only all scientific reports but also all findings, scientific or technical data upon which such reports are based." *United States v. Green,* 144 F.R.D. 631, 639 (W.D.N.Y. 1992). Unlike *Wilkerson,* the *Green* court based its holding on Rule 16(a)(1)(C) and 16(a)(1)(D), which are the same as the North Carolina statute. *See* Fed. R. Crim. P. 16; N.C. Gen. Stat. § 15A-903. Significantly, the court favored more extensive discovery because "it would appear to facilitate trial by enabling defense counsel to assess the correctness or sufficiency of the testing and to prepare to cross examine the government's experts and to present defense experts, if appropriate." *Id.*

The trial court's assertion here that "any further information in regards to that, you can surely extract from them on cross examination," overlooks what the courts noted in both *Green* and *Cunningham*: allowing the discovery would enhance *preparation* for cross examination, and permit both sides to assess the strengths and weaknesses of this aspect of the evidence. In addition, we noted in *Cunningham* that

Like federal Rule 16(a)(1)(D), Section 15A-903(e) must be construed as entitling a criminal defendant to pretrial discovery of not only conclusory laboratory reports, but also any tests performed *or procedures utilized by chemists to reach such conclusions.* However, unlike under federal Rule 16(a)(1)(D), no requirement exists that such information be material to the preparation of the defense or intended for use by the State in its case in chief.

*Id.* at 194-95, 423 S.E.2d at 808 (emphasis added). Thus, it is clear from *Cunningham* and *Bartlett* that this court has viewed the North Carolina rule broadly, an approach we are obligated to follow.

Similarly, courts in other states have held that the State should provide more than the bare test results and reports to the defendant in discovery under similar rules. For example, in *State v. Paul*, the Missouri Court of Appeals held that the State could not use as evidence the results of a chemical breath analysis when it would not release to the defendant upon request

> 'full information' concerning the chemical test of defendant's breath. They particularly asked about the type of equipment used, whether and when it had been inspected for accuracy and the result thereof, the names and qualifications of persons making the chemical analysis, the time defendant had been observed by the testing personnel, and a description of the procedure used in testing for alcoholic content of the defendant's blood.

*State v. Paul*, 437 S.W.2d 98, 101 (Mo.App. 1969) (superseded by statute that still required full information be given upon request but required a judicial determination of reasonableness, relevance and materiality before State's evidence could be suppressed. *See State v. Clark*, 723 S.W.2d 17 (Mo. App. E.D. 1986)). The Georgia Supreme Court held that "[t]he cross examiner must be able to examine the material that the expert relied upon to support her direct testimony; otherwise a thorough and sifting cross-examination of the expert's intelligence, memory, accuracy and veracity and of her scientific testing and opinion is not possible." *Eason v. State*, 396 S.E.2d 492, 494 (Ga. 1990) (although later overruled by statute, prior statute, upon which the decision was based, is like North Carolina statute).

Thus we conclude that the trial court erred by refusing to require the State to provide the defendant the discovery he sought pursuant to N.C. Gen. Stat. § 15A-903(e). However, in light of our resolution of the next issue, we need not determine whether this error alone would entitle defendant to a new trial.

[2] In his second assignment of error, defendant contends that the trial court erred in admitting testimony concerning laboratory tests and results of Lab Corp, a testing facility retained by defendant to independently test the substance at issue. Defendant argues that he never intended to call Lab Corp or its representatives as witnesses at

trial, and that pursuant to N.C. Gen. Stat. § 15A-905(b), the State would only have been able to inspect results, reports, or documents made in connection with defendant's case, "if the defendant intends to offer such evidence or tests or experiments made in connection with such evidence, as an exhibit or evidence in the case." Thus, defendant contends that, by calling the Lab Corp employees to testify, the State: (1) circumvented North Carolina's rules of discovery; (2) compelled defendant to supply evidence against himself; (3) violated the defendant's Sixth Amendment right to effective assistance of counsel; and (4) violated the defense attorney's work product privilege. We agree that the State's actions violated the defendant's rights to effective assistance of counsel, and related work product privilege. As this is an issue of first impression in North Carolina, we have analyzed this issue in depth and in light of the decisions of other courts which have confronted the issue, and concluded that this result reflects the better-reasoned approach.

Defendant correctly points out that the report of Lab Corp is protected from discovery by the State under N.C. Gen. Stat. § 15A-906, which states that "[e]xcept as provided in G.S. 15A-905(b) this Article does not authorize the discovery or inspection of reports, memoranda, or other internal defense documents made by the defendant or his attorneys or agents in connection with the investigation or defense of the case . . . ." N.C. Gen. Stat. § 15A-906 (1999). The exception provided in the statute allows the State "to inspect and copy or photograph results or reports of physical or mental examinations or of tests . . . , which were prepared by a witness *whom the defendant intends to call at the trial.*" N.C. Gen. Stat. § 15A-905(b) (1999) (emphasis added). If the defendant does not intend to call the witness at trial, the results and reports of tests performed by the witness are protected from pre-trial discovery.

Here, however, the State did not seek to obtain the report of Lab Corp in pre-trial discovery, but instead to present the testimony of Lab Corp employees at trial. Over the objection of the defendant, the trial court ruled:

I'll allow Ms. Ingold to testify, and the other employees that you have from Lab Corp. However, they may not testify to any communication, conversation, or report generated by them and delivered to counsel for the defendant, any communication between them and counsel for the defendant, and anything that was said to them by counsel for the defendant. Their testimony will be lim-

ited to their procedures and the result of any testing which they did upon the substance which was contained in State's Exhibit 2, which was the—identified as the controlled substance.

The wording of the court's ruling and of the State's brief indicate that both believed that, while the report of Lab Corp's testing of the material was protected by N.C. Gen. Stat. § 15A-905, the results of the testing were not. We disagree.

While N.C. Gen. Stat. 15A-905(b) is headed "Reports of Examinations and Tests," the clear wording of the statute itself is that the State may "inspect and copy or photograph *results or reports* of physical or mental examinations or of tests . . ., which the defendant intends to introduce in evidence at the trial or which were prepared *by a witness whom the defendant intends to call at the trial . . . .*" N.C. Gen. Stat. 15A-905(b) (1999) (emphasis added). Defendant did not intend to introduce results of Lab Corp's test, or to call the testers as witnesses; thus the results would not have been discoverable had the State asked for them.

However, the fact that the State could not have obtained the results through pre-trial discovery does not necessarily mean they may not be used at trial. In *State v. Hardy*, the defense sought pre-trial disclosure of a transcribed interview of one of the state's witnesses. *See State v. Hardy*, 293 N.C. 105, 125, 235 S.E.2d 828, 840 (1977). The State refused, claiming that the material was protected by N.C. Gen. Stat. § 15A-904, which "does not require the production of reports, memoranda, or other internal documents made by the prosecutor . . . or of statements made by witnesses or prospective witnesses of the State to anyone acting on behalf of the State." N.C. Gen. Stat. § 15A-904(a) (2001). The *Hardy* Court agreed that the material was protected from pre-trial discovery, but held that "G.S. 15A-904(a) does not bar the discovery of prosecution witnesses' statements *at trial.*" *Hardy*, 293 N.C. at 125, 235 S.E.2d at 840 (emphasis added). The Court went on to state:

At trial the major concern is the "search for truth" as it is revealed through the presentation and development of all relevant facts. To insure that truth is ascertained and justice served, the judiciary must have the power to compel the disclosure of relevant facts, *not otherwise privileged*, within the framework of the rules of evidence.

*Id.* (emphasis added).

Further, in *State v. Warren*, the North Carolina Supreme Court allowed the State to compel discovery of defendant's non-testifying expert's report for use in cross-examination of a testifying expert, stating "even when the statutes limit the trial court's authority to compel *pretrial* discovery, the court may retain inherent authority to compel discovery of the same documents at a later stage in the proceedings." *State v. Warren*, 347 N.C. 309, 325, 492 S.E.2d 609, 618 (1997), *cert. denied*, 523 U.S. 1109, 140 L.Ed.2d 818 (1998). However, this was done in the context of a capital sentencing hearing, "where the Rules of Evidence do not apply" and "the trial court must permit the State 'to present any competent evidence supporting the imposition of the death penalty.' " *Id.* at 325-26, 492 S.E.2d at 618. If the State is prevented from compelling a defense expert to testify at trial, this protection must stem from a different source than the discovery rules.

Here the issue arose because agents of the State, while in the process of delivering evidence to the defense expert for testing, served a subpoena on the expert. Under applicable discovery provisions, neither the State nor the defense are required to release the identities of non-testifying experts. *See* N.C. Gen. Stat. § 15A-904, 905 (1999). Without knowing the expert's identity, the adverse party would obviously be unable to compel his testimony. However, in a case like this, where the court instructs officers to deliver to a defense expert physical evidence held by law enforcement to maintain its chain of custody, the defense necessarily reveals the identity of its expert. The court could, as an alternative, have ordered the evidence delivered to a neutral third party for delivery to the expert in order to protect both the chain of custody and the identity of defendant's expert.

In a similar case of first impression, the Appellate Court of Illinois held that a scientific report by a non-testifying consulting expert retained by the defendant was protected from disclosure to the state. *See People v. Spiezer*, 735 N.E.2d 1017 (Ill. App.3d 2000). The Court in *Spiezer* stated:

> [M]any jurisdictions have held that the reports prepared by nontestifying, consulting experts are protected from disclosure. What is unclear, however, is the proper framework for the analysis. Four distinct bases for such protection have emerged . . . : the fifth amendment privilege against self-incrimination, the sixth amendment right to effective assistance of counsel, the attorney-client privilege, and the work product doctrine.

*Id.* at 1020. As the defendant neither addressed the attorney-client privilege in his assignments of error nor argued it in his brief, we confine our analysis to the remaining three bases.

We first address the Fifth Amendment privilege against self-incrimination. Defendant argues that by compelling the testimony of experts that he retained, the State required him in effect to supply evidence against himself. We disagree. In *United States v. Nobles*, the United States Supreme Court held that "[t]he Fifth Amendment privilege against compulsory self-incrimination is an intimate and personal one . . . . [I]t adheres basically to the person, not to information that may incriminate him." *United States v. Nobles*, 422 U.S. 225, 233, 45 L.Ed.2d 141, 150-51 (1975). The Court concluded that allowing the disclosure to the prosecution of a report prepared by a defense investigator would not violate the defendant's Fifth Amendment privilege which, "being personal to the defendant, does not extend to the testimony or statements of third parties called as witnesses at trial." *Id.* at 234, 45 L.Ed.2d at 151. Although the *Nobles* Court considered the specific instance of the report of a third party who was also a testifying witness, the Court's ruling implies that the Fifth Amendment privilege would not extend to the statements of non-testifying third party consulting experts. We therefore hold that the defendant's privilege against self-incrimination does not bar the State from compelling testimony from a consulting expert retained by the defendant.

We next turn to the work-product doctrine, originally recognized by the United States Supreme Court in *Hickman v. Taylor*, where the Court stated:

> [i]t is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interest.

*Hickman v. Taylor*, 329 U.S. 495, 510-11, 91 L.Ed. 451, 462 (1947). The Court went on to establish that certain materials, prepared by the attorney in anticipation of litigation, were protected from discovery by a qualified privilege. *See id.* In *Nobles*, the Court extended the doctrine to "protect material prepared by agents for the attorney as well

as those prepared by the attorney himself." *Nobles*, 422 U.S. at 238-39, 35 L.Ed.2d at 154; *see, also, Hardy*, 293 N.C. at 126, 235 S.E.2d at 841. The principles of *Hickman* were embodied in Rule 26(b)(3) of the Federal Rules of Civil Procedure. Similar principles are codified in N.C. Gen. Stat. § 15A-904 and N.C. Gen. Stat. § 15A-906. Although the work product doctrine was created in the context of civil litigation, it applies in criminal cases as well. *See Hardy*, 293 N.C. at 126, 235 S.E.2d at 841. Moreover, although the statutory work product protections may be limited to pretrial discovery, the *Nobles* Court noted that "the concerns reflected in the work product doctrine do not disappear once trial has begun. Disclosure of an attorney's efforts at trial, as surely as disclosure during pretrial discovery, could disrupt the orderly development and presentation of his case." *Nobles*, 422 U.S. at 239, 45 L.Ed. 2d at 154. The *Nobles* Court did not define the scope of the work product doctrine's protection at trial, holding that the defendant had waived the doctrine's protection by presenting the defendant's consulting expert as a witness at trial.

In *United States v. Walker*, which is closely analogous, the court held that the government was barred by the work product doctrine from calling as witnesses ballistics experts retained by the defendant, but whom the defendant did not intend to call himself. *See United States v. Walker*, 910 F.Supp. 861 (N.D.N.Y 1995). The court noted that "exhaustive research has disclosed no criminal case in which a federal court has permitted the government to elicit testimony from a defendant's consultative expert concerning that expert's efforts or opinions undertaken or developed at the request of a defense attorney in preparation for a criminal trial." *Id.* at 864. While the court left open the possibility of the government obtaining the testimony of defense experts given "a showing of substantial need and undue hardship," as a general rule the court opposed the practice. *Id.* at 865. "Absent such an area of qualified privileged [sic] within which to prepare for trial a criminal defendant's preparation can only be crippled by the prospect of creating an unfavorable witness every time he attempts to obtain an unbiased assessment of the government's evidence by consulting an expert." *Id.* at 865. We note that the *Walker* court was concerned not only with the admission of the report of a defense expert, but also with the government's attempt to compel the expert to testify, as occurred here.

Similarly, the court in *Speizer* concluded that the work product doctrine was the proper framework within which to analyze the state's attempt to compel pretrial disclosure of the report of a non-

testifying, consultative expert retained by the defendant. *See Speizer*, 735 N.E.2d at 1020. In its analysis, the court attempted to distinguish between the work product doctrine and the Sixth Amendment right to effective assistance of counsel. *See id.* at 1025. The court reasoned that the government "violates the right [to effective assistance of counsel] when it interferes in certain ways with the ability of counsel to make independent decisions about how to conduct the defense." *Id.* The work product doctrine, however, operates not only to "protect the reports and potential testimony of nontestifying, consulting experts" but also "to increase the information available to the trier of fact by encouraging the attorney to seek, on his own, information about the case that he could not obtain from his adversary through the discovery process." *Id.* at 1026-27. The court reasoned that the adversarial process of litigation requires a balance between the need of the defendant for confidentiality in developing trial strategy and the need for the trier of fact to have access to the relevant facts of the case. *See id.* at 1026. Because the work product doctrine is a qualified privilege, not an absolute one, the State may defeat the privilege by showing a special need for the testimony of the defendant's consultative expert. *See id.* at 1026. The *Speizer* court concluded:

> It is precisely this need to strike a balance between competing interests at trial that precludes protecting the reports and potential testimony of a nontestifying, consulting expert on sixth amendment grounds. If the protection were embodied in constitutional form, it would not be amenable to change by rule, statute, or further case law development. Courts and legislatures should have reasonable freedom to develop new approaches to issues concerning discovery and testimonial privilege. We believe that such freedom would be unnecessarily impaired were our holding to turn on sixth amendment analysis.

*Id.* at 1027.

Several other courts, by contrast, have held that the Sixth Amendment right to effective assistance of counsel is the proper basis upon which to bar the state from attempting to compel the testimony of a non-testifying, consultative witness retained by the defendant.

For example, in *State v. Mingo*, the New Jersey Supreme Court confronted the issue when the state sought to compel the testimony of a handwriting expert retained by the defendant. *State v. Mingo*, 392 A.2d 590 (N.J. 1978). Initially, the court noted:

the State had no justification for calling defendant's handwriting expert as its witness. If it considered the identity of the disputed note's author to be a critical part of its case, the State was fully capable of retaining its own expert. The better practice would have been for it to have done so, and thus avoid jeopardizing any conviction it might obtain.

*Id.* at 592. The court went on to analyze the defendant's right to effective assistance of counsel, and held that in order for a defense attorney to provide the guaranteed effective assistance:

it is essential that he be permitted full investigative latitude in developing a meritorious defense on his client's behalf. This latitude will be circumscribed if defense counsel must risk a potentially crippling revelation to the State of information discovered in the course of investigation which he chooses not to use at trial.

*Id.* at 592. The court cited *United States v. Alvarez* in support of the theory that "[t]he attorney must be free to make an informed judgment with respect to the best course for the defense without the inhibition of creating a potential government witness." *United States v. Alvarez*, 519 F.2d 1036, 1047 (3rd Cir. 1975). The Sixth Amendment right to effective assistance of counsel, therefore, encompasses the right of the defense attorney to formulate strategy and conduct the defense free from government interference. *See Speizer*, 235 N.E.2d at 1025. The *Mingo* Court went on to hold that even when the defense waives its Sixth Amendment protection of the report of a consultative expert by announcing its intention to use the report at trial, it "does not waive its right to control the testimonial use of the expert; he remains unavailable to the State as a witness." *Mingo*, 392 A.2d at 595. When a defendant intends to present an expert witness at trial, the report of that expert becomes available to the State in pre-trial discovery. If the defense expert actually testifies at trial, the State may cross-examine. "However, should the defense elect not to present the expert as a witness after previously indicating to the contrary, the fact that his otherwise confidential reports have been disclosed to the prosecution does not entitle the State to call the expert as its witness over objection by the defense." *Id.* Similarly, in *State v. Williams*, the North Carolina Supreme Court held that a defendant was required to disclose to the State the report of an expert which it intended to call at trial, even though subsequently the defense did not call the expert or seek to introduce the report itself at trial. *State v. Williams*, 350 N.C. 1, 18, 510 S.E.2d 626, 638 (1999), *cert. denied*, 528 U.S. 880, 145

L.Ed.2d 162 (1999). The *Williams* Court did not confront the issue of whether the State could call the expert to testify if the defense did not do so.

The Supreme Court of Colorado has also ruled that a "trial court's decision to permit the prosecution to call the defense-retained expert in its case-in-chief absent waiver or compelling justification denied the defendant his constitutional right to effective assistance of counsel." *Hutchinson v. People*, 742 P.2d 875, 876 (Colo. 1987). The court reasoned that thorough preparation is essential to effective assistance of counsel. "Without knowledgeable trial preparation, defense counsel cannot reliably exercise legal judgment and, therefore, cannot render reasonably effective assistance to his client." *Hutchinson*, 742 P. 2d at 881. As part of that preparation, the defense counsel may need to consult experts to develop strategy for presentation or rebuttal of physical evidence.

> In some instances, an expert may be needed as a defense witness to establish a defense or to rebut a case built upon the powerful investigative arsenal of the state. Consequently, it cannot be denied that a defense counsel's access to expert assistance is a crucial element in assuring a defendant's right to effective legal assistance, and ultimately, a fair trial.

*Id.* The *Hutchinson* Court held that if the prosecution were allowed, in effect, to co-opt the defendant's experts, "defense attorneys might be deterred from hiring experts lest they inadvertently create or substantially contribute to the prosecution's case against their clients." *Id.* at 882. Or they might be motivated to hire only those experts which they have reason to believe will lean their way. Neither outcome advances the search for the truth, and both impair the defendant's right to "effective" assistance of counsel.

Taking what we believe to be the most reasonable synthesis of these cases and principles, we conclude that the trial court erred when it allowed the State to compel testimony from employees of Lab Corp that defendant did not plan to call as witnesses. We believe that in so doing, the trial court infringed upon the defendant's Sixth Amendment right to effective assistance of counsel, and unnecessarily breached the work-product privilege.

However, where there is an alleged violation of the defendant's constitutional rights, the State has the burden of showing that the error was "harmless beyond a reasonable doubt." *See* N.C. Gen. Stat.

§ 15A-1443 (2001). Having determined that the trial court's error has constitutional dimensions, under this standard we conclude that it requires a new trial.

In the absence of the defense expert's testimony, the State's evidence was inconclusive. Two of the four tests the State ran on the substance here produced negative results, while two were positive. One test, run twice, returned different results. On cross examination, the SBI witness was unable to account for the discrepancy. The witnesses at issue here, Ingold and Walker, Lab Corp employees, retained by defendant but who testified against him, provided the test results that could very well have tipped the balance in the State's favor. Given that the defense may have been hampered upon cross-examination by the denial of their discovery request, discussed earlier in this opinion, we cannot conclude that the trial court's error was harmless beyond a reasonable doubt. As such, we reverse the defendant's conviction and remand for a new trial.

Because the defendant's remaining issues may not arise in future trial, we decline to address them now.

New trial.

Judges MARTIN and CAMPBELL concur.