STATE OF NORTH CAROLINA v. WILBERT LESTER FAIR

No. COA03-707

(Filed 15 June 2004)

**Discovery— foundation of expert opinion—laboratory results—data collection procedures**

The trial court erred in a sale and delivery of cocaine and possession with intent to sell or deliver cocaine case by denying defendant's motion for further discovery from the State concerning the foundation of its expert's opinion as to the testing by the SBI laboratory to determine the nature of the substance submitted, because: (1) although defendant's oral discovery requests made at the conclusion of the voir dire hearing were not embodied in his earlier written motion and were properly denied since they did not comply with N.C.G.S. § 15A-903, defendant's written discovery motion did comply with this statute; (2) defendant is entitled to more than just the naked results of the State's labora-

tory analysis; and (3) although it is beyond the discovery provisions of N.C.G.S. § 15A-903 to require the State to provide defendant with information concerning peer review of the testing procedure, whether the procedure has been submitted to the scrutiny of the scientific community or is generally accepted in the scientific community, citations to empirical studies supporting the opinion, or citations to articles in scientific treatises or journals supporting the opinion, the State is required to provide discovery of data collection procedures requested by defendant.

On writ of certiorari by defendant to review judgment entered 21 September 2000 by Judge J. Marlene Hyatt in Henderson County Superior Court. Heard in the Court of Appeals 4 March 2004.

*Attorney General Roy Cooper, by Assistant Attorney General John F. Oates, Jr., for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Charlesena Elliott Walker, for defendant-appellant.*

CALABRIA, Judge.

Wilbert Lester Fair ("defendant") seeks review of a judgment entered on jury verdicts finding him guilty of sale and delivery of cocaine and possession with intent to sell or deliver cocaine.[1] The court found his prior record level was level IV and sentenced him as a habitual felon to a term of 107 to 138 months' imprisonment in the North Carolina Department of Correction. Because we find prejudicial error, we conclude defendant is entitled to a new trial.

On 20 March 2000, the Hendersonville Police Department conducted an undercover narcotics investigation. As part of this investigation, Kimberly Shelton, working as an undercover agent, purchased two off-white rocks resembling crack cocaine from defendant for twenty dollars. The substance was sent to the State Bureau of Investigation ("SBI") for chemical analysis. Jay Pintacuda ("Pintacuda"), a chemical analyst employed by the SBI, determined the substance contained cocaine and weighed .07 grams. This determination was based on the performance of cobalt thiocyanate, infrared spectrographic, and gold chloride crystallography analyses. Pintacuda memorialized the tests he performed and the results of his testing in a laboratory report.

---

1. Our review of the judgment is pursuant to a petition for writ of certiorari granted by this Court on 28 January 2003.

Prior to trial, the State properly notified defendant of its intention to introduce the SBI laboratory report into evidence without further authentication pursuant to N.C. Gen. Stat. § 90-95(g). Defendant filed a written motion for discovery on 12 September 2000 in which he (1) objected to the introduction of the State's laboratory report pursuant to N.C. Gen. Stat. § 90-95(g), (2) moved for a pretrial hearing to "evaluate the adequacy of the foundation of the opinions to be proffered by the State[,]" and (3) requested that the State disclose the following:

a. A concise and specific statement of each expert opinion the State intends to introduce;

b. The name, address and curriculum vita [sic] of each witness the State intends to qualify as an expert in order to present such opinion testimony;

c. The scientific or technical foundations of each opinion, including, but not limited to:

i. Citations to empirical studies supporting the opinion;

ii. Citations to articles or chapters in scientific treatises or journals supporting the opinion;

iii. Data collected by the . . . witness or those under his/her supervision, in connection with this case, including the data collections instruments used, the data collection procedures, and the statistical analysis applied to the data in forming the opinion to be proffered.

In response to the motion filed by defendant, the State provided defendant with a form entitled "Western Regional Lab Analysis Form," which listed the tests performed on the substance, the results of the tests, the analyst, and the analyst's conclusion that the substance contained a "cocaine base."

The trial court heard arguments on defendant's motion immediately before trial on 20 September 2000. The trial court allowed defendant to *voir dire* Pintacuda prior to his testimony. During *voir dire*, Pintacuda testified concerning the methodology of the tests performed, the relevant protocols and manuals governing the tests, and quality control measures. Following the *voir dire*, defendant moved that the State be required to provide him with copies of the quality control manual, accreditations manual, and DEA training manual. This motion was denied by the trial court.

**STATE v. FAIR**

[164 N.C. App. 770 (2004)]

In his appeal to this Court, defendant asserts in relevant part that the trial court erred in denying defendant's motion for further discovery from the State concerning the foundation of its expert's opinion as to the testing by the SBI laboratory to determine the nature of the substance submitted. Specifically, defendant contends he was entitled to receive protocols, procedures, and manuals concerning quality control, accreditation, and training under the rationale of *State v. Cunningham*, 108 N.C. App. 185, 423 S.E.2d 802 (1992) and *State v. Dunn*, 154 N.C. App. 1, 571 S.E.2d 650 (2002), *disc. rev. denied*, 356 N.C. 685, 578 S.E.2d 314 (2003).

Discovery by a defendant in a criminal case is governed by the provisions of N.C. Gen. Stat. § 15A-903 (2003). Subsection (e) deals with reports of examinations and tests and provides, in relevant part, as follows:

> Upon motion of a defendant, the court must order the prosecutor to provide a copy of or to permit the defendant to inspect and copy or photograph results or reports of physical or mental examinations or of tests, measurements or experiments made in connection with the case, or copies thereof, within the possession, custody, or control of the State, the existence of which is known or by the exercise of due diligence may become known to the prosecutor.

With the exception of evidence falling under the rationale of *Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215 (1963), there is no general right of discovery in criminal cases under the United States Constitution. *Cunningham*, 108 N.C. App. at 195, 423 S.E.2d at 808.

North Carolina General Statutes § 15A-902(a) (2003) requires that discovery requests must be in writing and filed within the time periods specified in N.C. Gen. Stat. § 15A-902(d). Defendant's oral discovery requests made at the conclusion of the *voir dire* hearing, to the extent they were not embodied in his earlier written motion, did not comply with this statute and were properly denied by the trial court. However, defendant's written discovery motion did comply with this statute.

Under N.C. Gen. Stat. § 15A-903 as construed by this Court's decisions in *Cunningham* and *Dunn*, a defendant is entitled to more than just the naked results of the State's laboratory analysis. Under our present statutes and case law a defendant is entitled to the following discovery:

1. Results or reports of physical or mental examinations or of tests, measurements or experiments. N.C. Gen. Stat. § 15A-903(e).

2. Inspection, examination or testing of physical evidence by the defendant. *Id.*

3. Tests performed or procedures utilized by experts to reach their conclusions. *Cunningham*, 108 N.C. App. 185, 423 S.E.2d 802.

4. Laboratory protocol documents. *Dunn*, 154 N.C. App. 1, 571 S.E.2d 650.

5. Reports documenting "false positives" in the laboratory results. *Id.*

6. Credentials of individuals who tested the substance. *Id.*

The scope of discovery sought by defendant in this case goes far beyond that allowed under *Cunningham* and *Dunn*. Defendant asserts in his brief:

> [The State] did not, however, provide him with the discovery he requested of information regarding the procedures used in the tests; the data derived from the tests or *other materials pertinent to whether the techniques used have been tested; subjected to peer review and publication or submitted to the scrutiny of the scientific community.* Nor did the State provide the requested discovery of the technique's known or potential rates of error and *general acceptance in the scientific community.*

Defendant thus seeks to expand discovery in criminal cases to include articles and publications which would cast doubt upon the scientific validity of the testing procedure and form the basis of a challenge to the procedure under the rationale of *Daubert v. Merrell Dow*, 509 U.S. 579, 125 L. Ed. 2d 469 (1993).

Defendant is entitled to discover the results of the tests and the manner in which the tests were performed. This information is necessary for the defendant to understand the testing procedure and to conduct an effective cross-examination of the State's expert witness. *See Dunn*, 154 N.C. App. at 6, 571 S.E.2d at 654. However, it is beyond the scope of N.C. Gen. Stat. § 15A-903's discovery provisions to require the State to provide defendant with information concerning peer review of the testing procedure, whether the procedure has been submitted to the scrutiny of the scientific community, or is generally

accepted in the scientific community. It is further beyond the scope of permitted discovery to require the State to produce citations to empirical studies supporting the opinion, or citations to articles in scientific treatises or journals supporting the opinion. This is information that is not under the control of the State, and is generally available in the scientific community.

Thus, the trial court erred in not requiring the State to provide discovery of data collection procedures requested by the defendant. Such information falls under laboratory protocol documents held discoverable under *Dunn*, without which defendant could not effectively cross-examine the State's expert witness. This error requires a new trial. Defendant brought forward no argument concerning the failure of the State to provide a curriculum vitae of the State's expert or any statistical analysis; therefore, these matters are not before us.

New trial.

Judges McGEE and STEELMAN concur.