STATE OF NORTH CAROLINA v. SAMMIE DONALD CORNETT, Defendant

No. COA05-722

(Filed 2 May 2006)

**1. Motor Vehicles— driving while impaired—public vehicular area—no private road signs**

A road was open to vehicular traffic within the meaning of N.C.G.S. § 20-4.01(32)(c) and was a public vehicular area where defendant and an officer testified that they drove the road and

that there were no gates or signs indicating that it was private. The trial court did not err by denying defendant's motion to dismiss a charge of driving while impaired.

## 2. Motor Vehicles— driving while impaired—public vehicular area—road within subdivision

A road on which a DWI defendant was stopped was within or leading to a subdivision (and so was a public vehicular area) where there were six homes on the street, with five or six different owners, each with a driveway leading off the road.

## 3. Criminal Law— discovery—DWI case

The trial court did not err by denying a DWI defendant's pretrial motion to compel discovery from the State of written protocols regarding Intoxylizer operation, calibration, and measures. No statutory right to discovery exists for criminal cases originating in district court and there is no constitutional right to discovery other than for exculpatory evidence.

Defendant appeals from judgment entered 4 February 2005 by Judge John O. Craig, III, in the Superior Court in Surry County. Heard in the Court of Appeals 1 December 2005.

*Attorney General Roy Cooper, by Special Counsel Isaac T. Avery, III, for the State.*

*Guy B. Oldaker, III, for defendant-appellant.*

HUDSON, Judge.

In February 2005, a jury convicted defendant of driving while impaired ("DWI"). The court ordered defendant to perform 24 hours of community service and to pay a $100 fine. Defendant appeals. For the reasons discussed below, we conclude that there was no error.

The evidence tends to show the following facts. On 31 August 2002, Deputy Greg Hemric of the Surry County Sheriff's Department responded to a call about suspicious activity at a local school. Upon investigation, he discovered some guns on the school property. Hemric and other officers who came to assist him also found an ATV on the property and had seen some ATV's leaving the property. At about 10:20 p.m., Hemric went to the intersection of Flippin Road and Timber Lane, about 200 yards from the school. He parked on Timber Lane, a dead-end dirt road with six homes on it, with driveways lead-

ing off of Timber Lane to each of the homes, which have different owners. After Hemric parked on Timber Lane, he intended to stop all vehicles traveling on Timber Lane to question the occupants about the guns found on the school property. At about 11:45 p.m., defendant left a house on Timber Lane and drove down Timber Lane to where Hemric had parked. Due to the way Hemric had parked, defendant had to stop. Hemric asked defendant for his driver's license and noticed that defendant smelled of alcohol and had glassy eyes and slurred speech. Believing that defendant was impaired, Hemric called the Highway Patrol for assistance. Approximately 20 minutes later, Trooper Brian Jones arrived. He noted that defendant smelled of alcohol, that he had red, glassy eyes, that his speech was slurred, and that he seemed a little unsteady on his feet. With defendant's permission, Jones performed a horizontal gaze nystagmus test and the results were consistent with a 0.10 blood alcohol concentration. Jones placed defendant under arrest and took him to the Sheriff's office and administered an Intoxylizer test at 1:23 p.m., which showed an alcohol concentration of 0.09.

[1] Defendant argues that the trial court erred in failing to grant its motion to dismiss for insufficiency of the evidence. He contends that the State failed to introduce sufficient evidence that Timber Lane is a "public vehicular area" ("PVA"). We disagree.

In reviewing the trial court's ruling on a motion to dismiss, we must evaluate the evidence in the light most favorable to the State. *State v. Molloy*, 309 N.C. 176, 179, 305 S.E.2d 718, 720 (1983). All contradictions must be resolved in favor of the State. *Id.* Ultimately, we must determine "whether a reasonable inference of the defendant's guilt may be drawn from the circumstances." *State v. Lee*, 348 N.C. 474, 488, 501 S.E.2d 334, 343 (1998). If the evidence supports a reasonable inference of defendant's guilt, it is up to the jury to decide whether there is proof beyond a reasonable doubt. *State v. Trull*, 349 N.C. 428, 447, 509 S.E.2d 178, 191 (1998).

Our DWI statute prohibits driving impaired "upon any highway, any street, or *any public vehicular area* within this State." N.C. Gen. Stat. § 20-138.1 (a) (2001) (emphasis added). The relevant definition of PVA is: "a road opened to vehicular traffic within or leading to a subdivision for use by subdivision residents, their guests, and members of the public, whether or not the subdivision roads have been offered for dedication to the public." N.C. Gen. Stat. § 20-4.01(32)(c) (2001). Defendant argues that although Timber Lane is opened to

vehicular traffic, it is not a PVA because it is not within or leading to a "subdivision," and is not opened to vehicular traffic for use by the public. Both Officer Hemric and defendant testified that they drove on Timber Lane and that there were no gates or signs indicating that it was a private road. Thus, viewing the evidence in the light most favorable to the State, we conclude that Timber Lane was opened to vehicular traffic within the meaning of the statute; we note that a PVA must only be opened to vehicular traffic, but not necessarily "offered for dedication to the public." N.C. Gen. Stat. § 20-4.01(32)(c).

[2] We now turn to defendant's contention that Timber Lane is not within or leading to a subdivision. In *State v. Turner*, this Court rejected a similar argument, where the defendant contended that a privately-maintained road within a mobile home park was not a PVA. 117 N.C. App. 457, 458, 451 S.E.2d 19, 20 (1984). In interpreting N.C. Gen. Stat. § 20-4.01(32), the Court applied the Black's Law Dictionary definition of subdivision:

> Division into smaller parts of the same thing or subject matter. The division of a lot, tract, or parcel of land into two or more lots, tracts, parcels or other divisions of land for sale or development.

*Turner*, 117 N.C. App. at 458, 451 S.E.2d at 20. Here, evidence presented at trial showed that there were six homes on Timber Lane, with five or six different owners, each with a driveway leading off of Timber Lane. Accordingly, we conclude that there was sufficient evidence at trial that Timber Lane is within or leading to a subdivision.

[3] In his next argument, defendant contends that the trial court erred in denying his pre-trial motion to compel discovery from the State, in violation of his due process rights under the North Carolina constitution to confront adverse witnesses and prepare his defense. Prior to trial, defendant moved for discovery of numerous written protocols regarding Intoxylizer operation, calibration, and measures. In North Carolina, no statutory right to discovery exists for criminal cases originating in district court. N.C. Gen. Stat. § 15A-901 (2001). The official commentary to this section states:

> As cases in district court are tried before the judge, and usually on a fairly expeditious basis, the Commission decided there was no need at present to provide for discovery procedures prior to trial in district court. As misdemeanors tried in superior court on trial de novo have already had a full trial in district court, there is little reason for requiring discovery after that trial and prior to the new trial in superior court.

*Id.* Furthermore, it is well-established that there is no Constitutional right to discovery other than to exculpatory evidence. *See, e.g., State v. Cunningham,* 108 N.C. App. 185, 195, 423 S.E.2d 802, 808 (1992). Under *Brady v. Maryland,* the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87, 10 L. Ed. 2d 215, 218 (1963). On appeal, defendant has not argued that he was denied *Brady* materials and the cases he cites in support of his argument that he was entitled to discovery all involve statutory discovery rights in Superior Court. *See Cunningham; State v. Canady,* 355 N.C. 242, 559 S.E.2d 762 (2002); *State v. Fair,* 164 N.C. App. 770, 596 S.E.2d 871 (2004); *State v. Dunn,* 154 N.C. App. 1, 571 S.E.2d 650 (2002). We overrule this assignment of error.

No error.

Judges LEVINSON and JACKSON concur.