STATE OF NORTH CAROLINA, PLAINTIFF v. AVERY O'KEITH BARTLETT, DEFENDANT

No. COA97-999

(Filed 7 July 1998)

**1. Evidence— alco-sensor test—admissibility**

The trial court erred in a prosecution for driving with a revoked license by admitting the results of an alco-sensor test where the test results were admitted as substantive evidence and the State violated discovery rules.

**2. Search and Seizure— probable cause—officers unsure of identity of material seized**

The trial court erred in a prosecution for possession of bufotenine by failing to suppress the seizure of the bufotenine where the officers were not sure what the substance seized was and clearly did not have probable cause to believe that it was contraband. The laboratory identification of the substance as controlled does not relate back and justify the seizure, and the

proximity of the plastic-like substance to a clear plastic bag containing finely chopped vegetable material was not sufficient to establish probable cause because the officers were equally unsure about the identity of the chopped vegetable material, which laboratory analysis later revealed did not contain any controlled substance.

### 3. Trials— exhibits—examination by jury

The trial court erred in an action reversed on other grounds by approving out-of-court the jury's request ·to view exhibits. Neither defendant nor his counsel were ever advised of the action of the court. N.C.G.S. § 15A-1233.

Appeal by defendant from judgments entered 28 February 1997 by Judge W. Russell Duke, Jr., in Craven County Superior Court. Heard in the Court of Appeals 29 April 1998.

On 2 September 1996, defendant Avery O'Keith Bartlett drove from his home in Camden to New Bern to return his son to the child's mother following a weekend visitation. Prior to returning to Camden, he showered at the residence of an acquaintance and, accompanied by two acquaintances, drove to get something to eat. A New Bern police officer testified that he noticed the tinted windows on defendant's Jeep and thought they were too dark. The officer also testified that he could not read the expiration date on the Jeep's temporary tag. The officers lost sight of the Jeep for a time, but continued to look for the vehicle. An officer saw the Jeep in the driveway of an apartment building, and Officers Wilson and Burkhart parked across the street from the apartments and waited for defendant to move the vehicle. Accompanied by an acquaintance, defendant drove across the street, and parked in the lot beside the patrol vehicle.

Officer Burkhart approached defendant, told him that he thought his windows were too dark, and asked for his license and registration. Defendant had no driver's license due to a conviction the previous year for driving under the influence, but gave the officer his limited driving privilege. The limited driving privilege allowed defendant to drive between 6:00 a.m. and 8:00 p.m., Monday through Friday, to maintain his household.

Officer Wilson told Officer Burkhart she thought there were outstanding warrants on defendant, so she radioed the shift supervisor to check. Defendant and his passenger were ordered to remain in the Jeep. Officer Burkhart told defendant that he was having a tintmeter

**STATE v. BARTLETT**

[130 N.C. App. 79 (1998)]

brought to the scene. A tintmeter was never brought to the scene, nor was defendant ever charged with an offense involving tinted windows. Copies of outstanding arrest warrants for defendant were brought to the scene. Defendant was arrested, taken out of the Jeep, handcuffed and placed in the backseat of Wilson's patrol car. Defendant's passenger was searched for weapons. Both Officers Burkhart and Wilson then searched defendant's Jeep.

Officer Wilson searched a black book bag that was on the backseat of the Jeep just behind the driver. Wilson testified that the bag contained school text books, an ID card for defendant, a clear plastic bag containing finely-chopped vegetable material with a lot of white specks, and a piece of black, hard, plastic material wrapped in a piece of aluminum foil. Defendant was taken to the magistrate's office.

Officer Burkhart testified that while in the magistrate's office, he noticed for the first time a moderate odor of alcohol about defendant. The officer then administered an alco-sensor test in the magistrate's office and arrested defendant for driving while license revoked.

The items seized from defendant's Jeep were sent to the SBI laboratory for analysis. The chopped vegetable material was not a controlled substance, but the plastic material was found to be bufotenine, a schedule 1 controlled substance. Defendant was convicted by a jury of driving while license revoked and possession of bufotenine. A third charge of maintaining a motor vehicle for the purpose of keeping a controlled substance was dismissed by the trial court. From judgments and commitments which included an active sentence, defendant appeals.

*Attorney General Michael F. Easley, by Assistant Attorney General Bryan E. Beatty, for the State.*

*George M. Jennings for defendant appellant.*

HORTON, Judge.

Defendant contends the trial court erred in: (I) admitting, over objection, testimony about the results of the alco-sensor test; (II) failing to suppress the admission in evidence of the hard plastic item seized from defendant's vehicle because there was no probable cause for its seizure; and (III) directing that certain exhibits be delivered to the jury in the jury room during their deliberations without doing so in open court and without informing defendant or his counsel of the jury's request.

STATE v. BARTLETT

[130 N.C. App. 79 (1998)]

I.

[1] The trial judge admitted, over the objection of defendant, the results of an alco-sensor test. Although the arresting officer did not notice the odor of alcohol on defendant's breath at the scene of the arrest, the officer testified that he smelled a moderate odor of alcohol while in the magistrate's office with defendant. Defendant had already produced a limited driving privilege for the officer. N.C. Gen. Stat. § 20-179.3(h) (Cum. Supp. 1997) provides, in part, that all limited driving privileges must include a restriction that the privilege holder not drive at any time while he has remaining in his body any alcohol. In the instant case, defendant's limited driving privilege contained the above provision. N.C. Gen. Stat. § 20-179.3(j) provides, in pertinent part, that a holder of a limited driving privilege who violates the restriction against driving while he has remaining in his body any alcohol previously consumed commits the offense of driving while his license is revoked under N.C. Gen. Stat. § 20-28(a), which is an alcohol-related offense subject to the implied-consent provisions of N.C. Gen. Stat. § 20-16.2. The officer requested that defendant submit to an alco-sensor screening test and defendant did so.

The results of an approved alcohol screening device are admissible to determine if there are reasonable grounds to believe that defendant has committed an implied-consent offense, provided that "the device used is one approved by the Commission for Health Services and the screening test is conducted in accordance with the applicable regulations of the Commission as to the manner of its use." N.C. Gen. Stat. § 20-16.3(c) (1993); see Moore v. Hodges, 116 N.C. App. 727, 449 S.E.2d 218 (1994). The alco-sensor is an approved alcohol screening test device pursuant to the provisions of 15A N.C.A.C. 19B.0503(a)(1). Here, however, the results of the alco-sensor test (reading .05) were not introduced to show probable cause for defendant's arrest, but were erroneously introduced before the jury, over defendant's objection, as substantive evidence. N.C. Gen. Stat. § 20-16.3(d) (Cum. Supp. 1997), which governs the admissibility of alco-sensor test results, provides only one instance where such results might be introduced as substantive evidence: "Negative or low results on the alcohol screening test may be used in factually appropriate cases by the officer, a court, or an administrative agency in determining whether a person's alleged impairment is caused by an impairing substance other than alcohol." In the case before us, there is no contention that the alco-sensor test results were admitted to show that defendant was impaired by some substance other than alcohol. Thus, the test results were clearly not admissible.

**STATE v. BARTLETT**

[130 N.C. App. 79 (1998)]

Further, defendant complains that prior to trial he requested, pursuant to N.C. Gen. Stat. § 15A-903(e) (1997), that the State divulge any tests or experiments made in connection with the case. In its written response to the motion for voluntary discovery, the State attached a copy of the SBI laboratory report, but not the alco-sensor test.

At trial, Officer Burkhart was allowed to testify before the jury, over defendant's objection, as to the results of the alco-sensor test. When the District Attorney began to ask Officer Burkhart about the alco-sensor, the following colloquy occurred:

> A. [Officer Burkhart]. I gave him an Alcosensor test.
>
> MR. JENNINGS: Objection, Your Honor.
>
> THE COURT: Objection is overruled.
>
> Q. What is an Alcosensor?
>
> A. An Alcosensor is a—
>
> MR. JENNINGS: Your Honor—
>
> A. —primary screening device.
>
> MR. JENNINGS: May I be heard on my objection?
>
> THE COURT: Objection is overruled.
>
> MR. JENNINGS: Can I put my grounds for the objection in the record?
>
> THE COURT: Not at this point.
>
> MR. JENNINGS: Thank you.

Examination of the witness continued. Defendant objected to evidence of the alco-sensor reading, but his objections were overruled. At the close of the witness's direct examination, defendant again asked that he be allowed to put his reasons for his objection on the record. The Court responded that he could do so after cross-examination of the witness.

When the jury was excused for the evening, the Court addressed defendant's counsel:

> THE COURT: All right. You want to put something on the record?

STATE v. BARTLETT

[130 N.C. App. 79 (1998)]

MR. JENNINGS: Yes, sir. When the previously [*sic*] witness Miss Officer, Burkhart, he testified that he talked to the defendant and with the Alcosensor and that the defendant took the Alcosensor and he was allowed to testify over the defendant's objection and that he took Alcosensor and what the results were and to interpret the results and the Alcosensor and the results are not admissible in the evidence against the accused.

They are not admissible in my opinion for two reasons, because they fail because it does not—

THE COURT: You preserve your objection. The Court of Appeals will listen to those two reasons. What else have you got? I have already ruled. I happen to know it's admissible under the law.

MR. JENNINGS: Okay.

THE COURT: I think they were affirmed, but you see if you can reverse it, and what else have you got?

MR. JENNINGS: Well.

THE COURT: They don't pay me to listen to all of that. They pay 11 people—12 people up in Raleigh to listen to that. So what else have you got?

MR. JENNINGS: I have made my objection and thank you, Your Honor.

In response to the argument of defense counsel that he was not given the results of the alco-sensor test during discovery, the District Attorney responded that defendant knew he had taken the test and should have told his lawyer about the results. The District Attorney further commented that "you didn't hear any of this [line of argument] yesterday . . . ." As the above excerpts show, however, defense counsel was not allowed to fully state his arguments for the record on the previous day. The State offered no legitimate excuse for its failure to comply with the statutory discovery request.

Admission of the alco-sensor test results was error because they were erroneously admitted as substantive evidence and the State violated the discovery rules. We cannot say on the facts of this case that such error was harmless. Therefore, defendant is entitled to a new trial on the charge of driving while license revoked.

STATE v. BARTLETT

[130 N.C. App. 79 (1998)]

## II.

[2] Defendant contends the trial court erred in failing to suppress evidence resulting from the seizure by the arresting officers of the plastic-like substance later identified as a controlled substance, bufotenine. Defendant argues that, while the officers had probable cause to arrest him on the outstanding warrants against him, and thus had probable cause to search his vehicle, they did not have probable cause to seize the substance in question as they articulated only a hunch, or suspicion, that the substance might be a controlled substance.

Officer Wilson testified that she "wasn't sure what it was." She described it as dark, reddish brown, almost black in color, and said it looked like a piece of plastic. She did not think it was plastic, however, since it was wrapped in aluminum foil. She thought the substance might be black tar heroin, although she admitted that black tar heroin did not look like plastic. Since she did not recognize the substance, she called Officer Godette, an officer experienced in drug cases. Officer Godette said, "she also didn't know [what it was], but that we might want to check it." Officer Burkhart said he "had no idea" what it might be. Officer Wilson decided to send the plastic-like substance to the laboratory to "find out what [it was]."

The SBI chemist testified that he had performed thousands of tests on suspected controlled substances, but had only encountered bufotenine three or four times in his career. Clearly, the officers did not have probable cause to believe that the seized substance was contraband. The State contends the proximity of the plastic-like substance to a clear plastic bag containing finely chopped vegetable material is sufficient to establish probable cause to seize the plastic-like substance. However, the officers were equally unsure about the identity of the chopped vegetable material. Officer Wilson testified that the "plastic bag almost looked as if it could have possibly contained some sort of very finely chopped marijuana." Laboratory analysis of the chopped vegetable material revealed that it did not contain any controlled substance.

In *State v. Beaver*, 37 N.C. App. 513, 246 S.E.2d 535 (1978), an officer seized a shot glass containing a white powder because it "could" or "might" contain a controlled substance. We held that "absent specific testimony indicating particular knowledge on the part of the officer making a belief that the white powder in the glass was contraband and establishing the basis for that knowledge, a white powder residue

in a glass must be taken as equally indicative of lawful substances and conduct as of contraband or unlawful conduct. Such would give rise to a mere suspicion, which will not support a finding of probable cause." *Id.* at 519, 246 S.E.2d at 540 (citing *Wong Sun v. United States*, 371 U.S. 471, 9 L. Ed. 2d 441 (1963)).

We hold that the circumstances in the case *sub judice* gave rise to a conjecture, at best, that the substance seized was a controlled substance. Although an analysis identified the substance as a controlled substance, the identification does not relate back and justify the seizure. We agree with defendant's contention that the trial court should have suppressed the seizure of the bufotenine and should not have allowed it in evidence. Its admission was prejudicial error requiring that defendant receive a new trial.

## III.

[3] When the jury returned to render its verdicts in open court, counsel for defendant noticed that several of the exhibits were in the possession of the jury. When counsel inquired of the trial court how the jury came in possession of the exhibits, the trial court stated that the jury requested the exhibits. Counsel for defendant then objected to the trial court's action in allowing the exhibits to be delivered to the jury on the grounds that it was in violation of N.C. Gen. Stat. § 15A-1233 (1997), to which the court replied that it was familiar with the statute. The trial court then rebuffed defendant's counsel, stating the following:

> THE COURT: . . . But I will say this, Mr. Jennings, if you had remained in the courtroom like you were instructed to do, it was just absolutely right out here in the open and I told the Clerk and Miss Bea to just, and told the court reporter, to give me those exhibits. I thought you were in the court, in fact, I think you probably were. But I thought I remember seeing you sitting right where that bailiff is sitting, but maybe you weren't.

> MR. JENNINGS: Your Honor.

> THE COURT: It was nothing secret about it. Everybody in here but you knew about it.

Testimony by a court bailiff, however, showed that the trial court was mistaken as to the sequence of events, and that the trial court was actually in chambers when informed by the bailiff that the jury wanted to see defendant's limited driving privilege and the SBI lab

report. The trial court approved the jury's request and the exhibits were delivered to the jury. The action was not taken in open court and neither defendant nor his counsel were ever advised of the action of the court. The District Attorney and courtroom clerk assisted the bailiff in locating the exhibits, but neither took any action to advise defense counsel about the development.

N.C. Gen. Stat. § 15A-1233 (1997) provides the procedure to be used when a jury, deliberating on a case, wants to examine some of the trial exhibits:

> (a) If the jury after retiring for deliberation requests a review of certain testimony or other evidence, the jurors must be conducted to the courtroom. The judge in his discretion, after notice to the prosecutor and defendant, may direct that requested parts of the testimony be read to the jury and may permit the jury to reexamine in open court the requested materials admitted into evidence. In his discretion the judge may also have the jury review other evidence relating to the same factual issue so as not to give undue prominence to the evidence requested.

> (b) Upon request by the jury and with consent of all parties, the judge may in his discretion permit the jury to take to the jury room exhibits and writings which have been received in evidence. If the judge permits the jury to take to the jury room requested exhibits and writings, he may have the jury take additional material or first review other evidence relating the same issue so as not to give undue prominence to the exhibits or writings taken to the jury room. If the judge permits an exhibit to be taken to the jury room, he must, upon request, instruct the jury not to conduct any experiments with the exhibit.

The State agrees in its brief that the actions of the trial court in the instant case were clearly erroneous. The jury was not brought into the courtroom, and neither defendant nor his counsel was advised of the request by the jury. The State contends, however, that the error was a harmless "technical" error which would not entitle defendant to a new trial. Although the actions of the trial court were clearly erroneous, we need not consider whether such error was harmless since we have awarded a new trial in each of the charges against defendant, and the error is not likely to recur.

New trial.

Judges GREENE and LEWIS concur.