STATE OF NORTH CAROLINA v. CAROLINE GOLDNER FORD

No. COA03-474

(Filed 1 June 2004)

**1. Contempt— criminal—public intoxication in court—beyond reasonable doubt standard**

The superior court erred in its de novo review of an appeal from a summary finding of contempt in district court arising from defendant's public intoxication in court for a driving while impaired charge by failing to sufficiently find that the facts upon which the judgment was based were established beyond a reasonable doubt, because: (1) neither the district court's findings in the summary proceeding, nor the superior court's findings in their de novo plenary proceeding, specifically indicate that the "beyond a reasonable doubt" standard of proof required by N.C.G.S. § 5A-14 for summary proceedings or N.C.G.S. § 5A-15(f) for plenary proceedings was actually applied; (2) at best, the transcript indicates the judgment may or may not have applied the proper standard, and there is no indication of the standard applied by the district court; and (3) failure of the superior court to indicate that the reasonable doubt standard of proof was applied is fatally defective unless the proceeding is of a limited instance where there were no factual determinations for the court to make.

**2. Evidence— results of alco-sensor test—alcohol cause of impairment**

The trial court erred in a criminal contempt proceeding arising from defendant's public intoxication in court for a driving while impaired charge by admitting the results of defendant's alco-sensor test, because: (1) N.C.G.S. § 20-16.3(d) provides that

**STATE v. FORD**

[164 N.C. App. 566 (2004)]

the only instance in which the results can be used for substantive evidence is to determine whether a person's alleged impairment is caused by an impairing substance other than alcohol; and (2) the test in this case was used to show that alcohol was in fact the cause of her impairment and that she was impaired.

Appeal by defendant from order entered 12 March 2003 by Judge Zoro J. Guice in Henderson County Criminal Superior Court. Heard in the Court of Appeals 28 January 2004.

*Attorney General Roy Cooper, by Assistant Attorney General Floyd M. Lewis, for the State.*

*Atkins & Craven, by Lee Atkins and Susan S. Craven, for defendant appellant.*

McCULLOUGH, Judge.

On 6 May 2002, defendant was present in Henderson County Criminal District Court for her trial on a driving while impaired charge. The court bailiff was informed by the clerk that defendant had an odor of alcohol about her. The bailiff walked by defendant while she was standing in the courtroom and smelled the odor of alcohol. The bailiff was within two feet of defendant, but did not speak to her. Defendant was unstable on her feet when trying to stand up straight, and was weaving back and forth. The bailiff then notified the Assistant District Attorney, and the Henderson County District Court Judge, the Honorable Randy Pool.

After receiving the information as to defendant's supposed condition, the judge called defendant around to make an inquiry of her. He asked defendant if she had been drinking, which she first denied. The judge informed her that it had come to his attention that she had the odor of alcohol about her, to which she admitted having had a drink during lunch. After this admission, the judge asked that she submit to an alco-sensor test. The judge later testified that he observed defendant's face to be redder the day of the summary contempt hearing in his courtroom, than it did at her *de novo* hearing before the superior court. He further testified that "I didn't think she was staggering, certainly not; but I thought that she was a little uneasy maybe on her feet, or unsteady maybe slightly on her feet."

Officer John M. Johnson, a K-9 patrol officer with the Henderson County Sheriff's Office, administered an alco-sensor test using the

sensor he kept in his car. Defendant registered approximately .08 on the alco-sensor, and Officer Johnson reported this to the judge.

The judge reported the results of the test to defendant, telling her that she was legally impaired. Based upon this, and the odor from her breath, he held her in contempt of court because she had willfully reached the legal level of intoxication before coming to court on her driving while impaired charge. The judge testified that he did not believe he could try defendant in her condition as her competency to stand trial was in question, and she would have been of questionable assistance to her attorney. This caused the judge to stop his proceedings and deal with the situation. He testified his proceeding was delayed 15 minutes by defendant's impairment. The judge further testified that he entered an oral order holding defendant in contempt of court and that defendant was represented by counsel. An order and commitment on the contempt charge was signed that day, 6 May 2002, by the judge. The judge ordered defendant to serve 24 hours in jail and to turn in her driver's license and not operate a motor vehicle until disposition of her charge of driving while impaired.

In between the contempt order of 6 May 2002, and the *de novo* superior court hearing before Judge Guice, defendant told her probation officer, Donna Cannon, that on 6 May 2002 defendant had two glasses of wine before going to court. Defendant believed it did not matter as she was not driving.

After the *de novo* superior court hearing on the contempt charge, Judge Guice found that defendant was in direct criminal contempt of the District Court of Henderson County on 6 May 2002. Judge Guice adopted the same punishment as ordered by the district court judge, ordering defendant be discharged from any further obligation to the court.

On appeal, defendant raises six issues alleging reversible error: (I) that the district court and superior court did not sufficiently find that the facts upon which the judgment was based were established beyond a reasonable doubt; (II) & (III) that the trial court improperly admitted the evidence of the alco-sensor test results; (IV) & (V) that the trial court's findings of fact do not sufficiently show that defendant was in contempt; and (VI) that defendant was unlawfully prosecuted for public intoxication without any showing that defendant was disruptive. Because we find that it was reversible error for the trial court not to indicate the standard of proof used in its *de novo* order, this opinion does not reach the other issues on appeal.

## Standard of Proof for Plenary Proceedings for Contempt

**[1]** Defendant contends that the district court and the superior court failed to find that the facts upon which the judgment rests were established beyond a reasonable doubt. Specifically, defendant argues that the district and superior courts were required to show that this standard of proof was applied in making its respective findings of fact. We hold the superior court, in its *de novo* review, issued an order that was deficient as a matter of law.

An appeal from a summary finding of contempt in district court is reviewed *de novo* by a superior court. N.C. Gen. Stat. § 5A-17 (2003). The *de novo* hearings are plenary proceedings that must be conducted in accordance with N.C. Gen. Stat. § 5A-15 (2003). It has long been held that when reviewing a contempt order *de novo*, the superior court reviews the facts and law, and additional testimony can be heard. *In re Deaton*, 105 N.C. 59, 62-63, 11 S.E. 244, 245 (1890). When an appeal proceeds to our Court, the findings of the judge as to the facts are conclusive, and we can only review the law applicable to such state of facts. *Id.* at 63, 11 S.E. at 245.

N.C. Gen. Stat. § 5A-14(b), relating to summary proceedings for contempt, states:

> (b) Before imposing measures under this section, the judicial official must give the person charged with contempt summary notice of the charges and a summary opportunity to respond and must find facts supporting the summary imposition of measures in response to contempt. *The facts must be established beyond a reasonable doubt.*

*Id.* (emphasis added). N.C. Gen. Stat. § 5A-15(f), relating to plenary hearings, states:

> (f) At the conclusion of the hearing, the judge must enter a finding of guilty or not guilty. If the person is found to be in contempt, the judge must make findings of fact and enter judgment. *The facts must be established beyond a reasonable doubt.*

*Id.* (emphasis added). For summary hearings, this Court has therefore required:

> [T]he statute (N.C. Gen. Stat[]. § 5A-14(b)) clearly requires that the standard should be "beyond a reasonable doubt" and we find implicit in the statute the requirement that the judicial official's

findings should *indicate* that that standard was applied to his findings of fact.

*State v. Verbal*, 41 N.C. App. 306, 307, 254 S.E.2d 794, 795 (1979) (emphasis added). We hold the same is required in an order issued from a plenary hearing, as the import and consequences of the two hearings is substantially equivalent.

In *Verbal*, the defendant, an attorney, was cited by the trial court for direct contempt and sentenced after a summary proceeding to imprisonment for being 18 minutes late in returning to court after a lunch recess while a trial in which defendant was appearing was in progress. We reversed the superior court's finding of contempt during a summary proceeding when the trial court failed to allow the defendant an opportunity to be heard, nor did the court indicate what standard was applied in the court's contempt order. *Id.* We held these violations of the statute to make the lower court's order of contempt "fatally deficient" and reversed. *Id.*[1]

In the present case, neither the district court's findings in the summary proceeding, nor the superior court's findings in their *de novo* plenary proceeding, specifically *indicate* that the "beyond a reasonable doubt" standard of proof required by N.C. Gen. Stat. § 5A-14(b) (for summary proceedings) or N.C. Gen. Stat. § 5A-15(f) (for plenary proceedings) was actually applied. The State argues that the record does indicate, albeit indirectly, that the proper standard was used. Before making his findings of fact and conclusions of law from the *de novo* hearing, the superior court judge said that he "want[ed] to look at 5A-11 and 5A-14." The district attorney replied, "I have that, Judge. I've got it open to 5A-11." However, in his order, the trial judge cites only to N.C. Gen. Stat. § 5A-11, stating "that under [N.C. Gen. Stat.] § 5A-11, Criminal Contempt, that Criminal Contempt (a)(1), the conduct of the defendant was conduct which did interrupt[.]" The record does not indicate that he looked at N.C. Gen. Stat. § 5A-15(f) for the standard of proof required in plenary proceed-

---

1. In the most recent edition of the District Court *North Carolina Trial Judges' Bench Book*, 2d Ed. 1996, issued by the Association of District Court Judges of North Carolina and in cooperation with The Institute of Government, *Verbal* is cited for requiring the district court order indicated in its findings of fact, that the reasonable doubt standard was applied. *See* Chapter 4, page 9. In the most recent edition of the Superior Court *North Carolina Trial Judges' Bench Book*, 3d Ed. 1999, issued by the North Carolina Conference of Superior Court Judges and in cooperation with The Institute of Government, in the Orders and Forms Section, the model order for a Direct Criminal Contempt Order states in two places: "The court finds beyond a reasonable doubt."

ings. The only indication that the proper standard of review was applied was that he asked to review the statute before making his findings and that at the beginning of his findings, the boilerplate language of the order states "after consideration of the applicable law." We do not believe this sufficient to meet the requirement of *Verbal* that the "findings should *indicate* that that standard was applied[.]" *Verbal*, 41 N.C. App. at 307, 254 S.E.2d at 795 (emphasis added). Here, at best, the transcript indicates the judge may or may not have applied the proper standard, and there is no indication of the standard applied by the district court.

The State argues that, assuming we find the order did not comply with the principles of *Verbal*, the error was harmless and there is no reasonable possibility that a different result would have been reached. *See* N.C. Gen. Stat. § 15A-1443(a) (2003). However, as guided by *Verbal's* mandate concerning summary contempt proceedings, we hold that a superior court order from a plenary proceeding of contempt must also indicate that the reasonable doubt standard of proof was applied. Failure to make such an indication is fatally deficient, unless the proceeding is of a limited instance where there were no factual determinations for the court to make. *See In Re Owens*, 128 N.C. App. 577, 582, 496 S.E.2d 592, 595 (1998), *aff'd*, 350 N.C. 656, 517 S.E.2d 605 (1999) (Though the trial court failed to make a finding of the standard of proof applied, contempt was upheld of a witness for refusing to answer a question directed.).

### Alco-Sensor Test Results

[2] As the issue will likely recur at any new contempt proceeding in superior court, we here address the admissibility of the alco-sensor test. We agree with the position of Ms. Ford that the results of the alco-sensor test, as used by the trial court in this case, was error.

The most compelling evidence offered by the State as to Ms. Ford's condition was the result of the alco-sensor test. We have recognized that an "alco-sensor is an approved alcohol screening test device pursuant to the provisions of 15A N.C.A.C. 19B.0503(a)(1)." *State v. Bartlett*, 130 N.C. App. 79, 82, 502 S.E.2d 53, 55 (1998). The scope of the admissibility as to the results of the alco-sensor test are governed by N.C. Gen. Stat. § 20-16.3(d). This statute provides only one instance in which the results can be used for substantive evidence: " 'Negative or low results on the alcohol screening test may be used in factually appropriate cases by the officer, a court, or an administrative agency in determining whether a person's alleged

impairment is caused by an impairing substance other than alcohol.'" *Bartlett*, 130 N.C. App. at 82, 502 S.E.2d at 55 (quoting N.C. Gen. Stat. § 20-16.3 (2003)). The only other use of the results is not as substantiative evidence, but for "determin[ing] if there are reasonable grounds to believe that the [driver] has committed an implied-consent offense under G.S. 20-16.2." *Id.* "Except as provided in *this subsection*, the results of an alcohol screening test may not be admitted in evidence in any court or administrative proceeding." N.C. Gen. Stat. § 20-16.3(d) (emphasis added). *See Powers v. Powers*, 130 N.C. App. 37, 44-45, 502 S.E.2d 398, 403-04, *disc. review denied*, 349 N.C. 530, 526 S.E.2d 180 (1998) (Admission of the alco-sensor results was error as evidence for establishing findings of abuse and neglect.).

In the case before us, there is no contention that the alco-sensor test results were admitted to show that Ms. Ford was impaired by some substance other than alcohol. In fact, the tests were used to show that alcohol was in fact the cause of her impairment, and that she was impaired. Thus, the test results at this contempt hearing were clearly not admissible and the court erred when considering them. *Bartlett*, 130 N.C. App. at 86, 502 S.E.2d at 57. Therefore, in the event of any rehearing on the issue of contempt, the results of this test shall not be admissible.

For the reasons stated herein, we

Reverse.

Judges HUNTER and LEVINSON concur.