NO. COA14-129

NORTH CAROLINA COURT OF APPEALS

Filed: 16 September 2014

STATE OF NORTH CAROLINA

v.                                    Mecklenburg County
                                      No. 10 CRS 250836
BRUCE ALLEN TOWNSEND, JR.,
      Defendant.


Appeal by defendant from judgment entered 1 August 2013 by
Judge Susan E. Bray in Mecklenburg County Superior Court.  Heard
in the Court of Appeals 4 June 2014.

      *Attorney General Roy Cooper, by Special Deputy Attorney
      General Lars F. Nance, for the State.*

      *Arnold & Smith, PLLC, by Laura M. Cobb, for defendant-
      appellant.*

      BRYANT, Judge.

      Defendant's *Knoll* motion was properly dismissed where the
magistrate followed N.C. Gen. Stat. § 15A-511(b) in informing
defendant of his rights and in setting an option bond such that
any technical statutory violation committed by the magistrate
was not prejudicial to defendant.  Where the State presented
sufficient evidence such that a reasonable person could believe
defendant committed the offense of driving while impaired, the

trial court properly denied defendant's motion to suppress for lack of probable cause. A technical statutory violation committed by the trial court during a pre-trial hearing but not at trial did not result in error that would entitle defendant to a new trial. Where the trial court determined that a driving while impaired checkpoint was established for a legitimate primary purpose and that the *Brown* factors were met, defendant's motion to suppress evidence of the checkpoint was properly denied.

On 21 October 2010, defendant Bruce Allen Townsend, Jr., was arrested for driving while impaired. On 24 August 2011, defendant was convicted in Mecklenburg County District Court of driving while impaired and sentenced to thirty days imprisonment. The District Court suspended defendant's sentence and placed him on unsupervised probation for twelve months. Defendant was further ordered to obtain a substance abuse assessment, comply with recommended treatment, complete twenty-four hours of community service, and pay courts costs, a $100.00 fine, and a $250.00 community service fee.

Defendant appealed to Superior Court, and on 30 August 2012, was tried before a jury during the criminal session of Mecklenburg County Superior Court, the Honorable Susan E. Bray,

Judge presiding.  At trial, the State's evidence tended to show the following.

On the evening of 21 October 2010, a checkpoint was established in the 7200 block of Providence Road in Charlotte by the Charlotte-Mecklenburg Police Department to check for impaired drivers and other vehicular infractions.  At approximately 11:28 p.m., defendant drove up to the checkpoint where he encountered Officer Todd Davis.  Officer Davis engaged defendant in conversation and noticed that defendant emitted an odor of alcohol and had red, bloodshot eyes.  When asked by Officer Davis whether he had had anything to drink that evening, defendant responded that he had consumed several beers earlier.  Officer Davis administered two alco-sensor tests to defendant; both tests were positive for alcohol.

Officer Davis then asked defendant to perform several field sobriety tests.  Officer Davis testified that when he administered a horizontal gaze nystagmus test to defendant, he noticed three signs of intoxication.  On a "walk and turn" test, defendant exhibited two signs of intoxication, and on a "one leg stand" test, defendant showed one sign of intoxication.  Officer Davis also requested that defendant recite the alphabet from J

to V, which defendant did without incident. Officer Davis subsequently arrested defendant for driving while impaired.

Defendant was taken to a Breath Alcohol Testing vehicle located at the checkpoint where he blew a 0.10 on his first test and a 0.09 on his second test. Officer Davis then drove defendant to the Mecklenburg County jail. Defendant was admitted to the jail at 12:56 a.m., appeared before the magistrate at 2:54 a.m., and was released to his wife's custody at 4:45 a.m.

Defendant was convicted by a jury of driving while impaired and sentenced by the trial court to sixty days imprisonment. Defendant's sentence was suspended and he was placed on unsupervised probation for twenty-four months. Defendant was also ordered to pay court costs, a $100.00 fine, and a $250.00 community service fee; perform twenty-four hours of community service; surrender his driver's license to the clerk; not operate a motor vehicle until his license is restored; and to complete all treatments recommended by his alcohol assessment. Defendant appeals.

_____

On appeal, defendant raises four issues as to whether the trial court: (I) erred in denying defendant's motion to dismiss

pursuant to defendant's *Knoll* motion; (II) erred in denying defendant's motion to suppress for lack of probable cause; (III) abused its discretion in denying defendant's motion to redact evidence of the alco-sensor test; and (IV) erred in denying defendant's motion to suppress evidence resulting from the checkpoint.

## I.

### Knoll Motion

Defendant first argues that the trial court erred in denying his *Knoll* motion to dismiss. We disagree.

A *Knoll* motion, based on *State v. Knoll*, 322 N.C. 535, 369 S.E.2d 558 (1988), alleges that a magistrate has failed to inform a defendant of the charges against him, his right to communicate with counsel, family, and friends, and of the general circumstances under which he may secure his release pursuant to N.C. Gen. Stat. § 15A-511. *See* N.C.G.S. § 15A-511(b) (2013); *Knoll*, 322 N.C. at 536, 369 S.E.2d at 559 ("Upon a defendant's arrest for DWI, the magistrate is obligated to inform him of the charges against him, of his right to communicate with counsel and friends, and of the general circumstances under which he may secure his release." (citation omitted)). If a defendant is denied these rights, the charges

are subject to being dismissed. *Knoll*, 322 N.C. at 544—45, 369 S.E.2d at 564. "[I]n those cases arising under N.C.G.S. § 20-138.1(a)(2), prejudice will not be assumed to accompany a violation of defendant's statutory rights, but rather, defendant must make a showing that he was prejudiced in order to gain relief." *Id*. at 545, 369 S.E.2d at 564. On appeal, the standard of review is whether there is competent evidence to support the trial court's findings of fact and its conclusions of law. *State v. Chamberlain*, 307 N.C. 130, 143, 297 S.E.2d 540, 548 (1982) (citation omitted). "If there is a conflict between the state's evidence and defendant's evidence on material facts, it is the duty of the trial court to resolve the conflict and such resolution will not be disturbed on appeal." *Id.* (citation omitted).

Defendant raised his *Knoll* motion during his pre-trial hearing, contending he was denied his right to communicate with counsel and friends, and that this denial to have others observe him resulted in substantial prejudice.

In its order denying defendant's motion to dismiss pursuant to *Knoll*, the trial court made the following findings of fact:

> 1. Officer Davis stopped [defendant] at a checkpoint on Providence Road at approximately 11:28pm on Thursday, October 21, 2010.

2. Defendant submitted to portable breath tests and had a positive reading for alcohol.

3. Officer Davis took Defendant to [the Blood Alcohol Testing] mobile unit for [an] intoxilyzer test. Defendant signed [a] rights [form] at 11:55pm, acknowledging his right to call an attorney or witness.

4. Defendant blew 0.09 on Intox EC/IR-II.

5. Defendant did not at any time call a witness or ask for a witness.

6. Defendant did call his wife . . . to let her know he had been arrested, [and] told her he or someone would call her later to come pick him up.

7. Officer Davis transported Defendant to [the] Mecklenburg County Jail, where he was received at approximately 12:56 am on October 22, 2010.

8. At the jail, Defendant had his property checked, was booked, saw the nurse, [and] was fingerprinted [and] photographed.

9. Officer Davis submitted his arrest paper work and charging affidavit to the magistrate.

10. Defendant signed [an] implied consent offense notice (AOC-CR-271) in front of [the] magistrate at 2:34am, giving his [wife's] name and phone number as a contact person.

11. [The] [m]agistrate had [Officer Davis's] information about the charge, BAC results, information from Defendant about address, length of employment, etc. and set

conditions of release. Those conditions were a $1000 secured bond or a $1000 unsecured release to a sober responsible adult with ID or any terms or conditions of pretrial services if accepted by the program.

12. Some official from the jail called [defendant's wife] to inform her that she could come pick up Defendant. She left her home around 3am and arrived at the jail around 3:15 or 3:20am to pick up Defendant.

13. [Defendant's wife] waited for about 20 minutes in the wrong area of the jail, then went to another area, spoke with appropriate personnel around 3:52am, [and] signed Defendant out at 4:21am (after jailers verified he had no outstanding criminal warrants, was medically cleared, retrieved his property, etc.).

The trial court then made the following conclusions of law:

In accordance with NCGS 15A-534(a), a judicial official, in determining conditions of pretrial release, must impose [at least] one of the following conditions:

1. Release the defendant on his written promise to appear.

2. Release the defendant upon his execution of an unsecured appearance bond in an amount specified by the judicial official.

3. Place the defendant in the custody of a designated person or organization agreeing to supervise him.

4. Require the execution of an appearance bond in a specified amount secured by a cash deposit in the full

amount of the bond, by a mortgage pursuant to NCGS 58- 74-5, or by at least one solvent surety.

Further, in accordance with NCGS 15A[-]534(b), the judicial official, in granting pretrial release, must impose condition (1), (2) or (3) in subsection (a) above unless he determines that such release will not reasonably assure the appearance of the defendant as required; will pose a danger of injury to any person; or is likely to result in destruction of evidence, subornation of perjury, or intimidation of potential witnesses. Upon making the determination, the judicial official must then impose condition (4) in subsection (a) above instead of condition (1), (2), or (3) and must record the reasons for doing so in writing to the extent provided in the policies or requirements issued by the senior resident superior court judge pursuant to NCGS 15A-535(a).

In this matter, the magistrate's terms and conditions of release for [defendant] included a combination of conditions (2) and (3), an unsecured bond and release to a sober responsible adult with ID, that person being [defendant's wife]. Defendant never asked for witnesses; in fact [defendant] only asked his wife to come pick him up.

North Carolina General Statutes, section 15A-534, provides that:

In determining which conditions of release to impose, the judicial official must, on the basis of available information, take into account the nature and circumstances of the offense charged; the weight of the evidence against the defendant; the defendant's family ties,

employment, financial resources, character, and mental condition; whether the defendant is intoxicated to such a degree that he would be endangered by being released without supervision; the length of his residence in the community; his record of convictions; his history of flight to avoid prosecution or failure to appear at court proceedings; and any other evidence relevant to the issue of pretrial release.

N.C. Gen. Stat. § 15A-534(c) (2013). "If the provisions of the . . . pretrial release statutes are not complied with by the magistrate, *and* the defendant can show irreparable prejudice directly resulting from [this noncompliance], the DWI charge must be dismissed." *State v. Labinski*, 188 N.C. App. 120, 126, 654 S.E.2d 740, 744 (2008) (citation omitted).

In its findings of fact and conclusions of law, the trial court noted that defendant had the opportunity to contact counsel and friends to observe him. A review of the record shows that defendant had several opportunities to call counsel and friends to observe him and help him obtain an independent chemical analysis, but that defendant failed to do so. In fact, the record shows that defendant asked that his wife be called, but only for the purpose of telling her that he had been arrested. As such, defendant was not denied his rights pursuant to *Knoll*.

Defendant further contends his rights were violated because the magistrate ordered defendant held under a $1,000.00 secured bond without justification and prior to meeting with him. Defendant cites *State v. Labinski* in support of his argument.

In *Labinski*, the defendant was arrested for driving while impaired. *Id*. at 122, 654 S.E.2d at 741. The defendant did not request that she be observed by witnesses, nor did she seek to have an independent chemical analysis conducted, even though her friends were at the detention center to help her. *Id*. at 122, 654 S.E.2d at 741—42. The magistrate gave the defendant a $500.00 secured bond without making any findings of fact as to why a secured bond was required. *Id*. at 122—23, 654 S.E.2d at 742. On appeal, this Court determined that the magistrate's failure to make findings as to why a secured bond was necessary amounted to a statutory violation. *Id*. at 126—27, 654 S.E.2d at 744—45. However, this Court affirmed the trial court, finding that despite the magistrate's commission of a statutory violation, the defendant failed to show how that violation was prejudicial to her. *Id*. at 127—28, 654 S.E.2d at 745.

Here, the conditions of the release order did not, as defendant contends, strictly impose a $1,000.00 secured bond on him. Rather, as noted by the trial court in its findings of

fact, the magistrate set an option bond that gave defendant a choice between paying a $1,000.00 secured bond or a $1,000.00 unsecured bond and being released to a sober, responsible adult; defendant was eventually released to his wife. Defendant now challenges the secured bond option, arguing that the magistrate was required to make written findings of fact as to the terms of defendant's option bond.

Pursuant to N.C. Gen. Stat. § 15A-534(a), a magistrate is not required to make written findings of fact when setting conditions of release unless the terms of defendant's release require a secured bond. N.C.G.S. § 15A-534(a) (2013). As such, although the magistrate was not required to make any written findings of facts in the option bond when imposing the condition of allowing defendant to pay an unsecured bond and be released to a sober, responsible adult, the magistrate was required to make written findings as to the option bond's other potential condition for release — a secured bond.

However, even though the magistrate may have committed a technical statutory violation, defendant has failed to demonstrate how he was prejudiced as a result. Defendant was not released on a secured bond — he was instead released on an unsecured bond to the custody of his wife. Therefore, even had

the magistrate been required to make findings of fact as to the secured bond option, no secured bond was imposed, and defendant cannot show prejudice. *See Labinski*, 188 N.C. App. at 127—28, 654 S.E.2d at 745 (holding that even though the magistrate committed a technical statutory violation by failing to make findings of fact regarding a secured bond, the defendant was unable to show how such a violation prejudiced her). Moreover, here, defendant was afforded his statutory right to pretrial release and his right to communicate with counsel and friends. Accordingly, defendant's argument is overruled.

## *II.*

### *Probable Cause*

Next, defendant contends the trial court erred in denying defendant's motion to suppress for lack of probable cause. We disagree.

We note at the outset that defendant has not assigned error to the trial court's findings of fact, and those findings are therefore binding on appeal. *In re S.N.H. & L.J.H.*, 177 N.C. App. 82, 83, 627 S.E.2d 510, 512 (2006) (citation omitted). Our review is thus limited to considering whether the trial court erred by concluding, as a matter of law, that there was probable cause to arrest defendant for driving while impaired. This

Court reviews conclusions of law *de novo*. *State v. Ripley*, 360

N.C. 333, 339, 626 S.E.2d 289, 293 (2006) (citations omitted).

> Probable cause for an arrest is a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty. To justify a warrantless arrest, it is not necessary to show that the offense was actually committed, only that the officer had a reasonable ground to believe it was committed. The existence of such grounds is determined by the practical and factual considerations of everyday life on which reasonable and prudent people act. If there is no probable cause to arrest, evidence obtained as a result of that arrest and any evidence resulting from the defendant's having been placed in custody, should be suppressed.

*State v. Tappe*, 139 N.C. App. 33, 36—37, 533 S.E.2d 262, 264

(2000) (citations and quotation omitted).

Defendant argues the trial court erred in denying his

motion to suppress for lack of probable cause because "there was

no set of facts in the case at hand that would lead a

reasonable, cautious person to believe that [defendant] was

driving while impaired." Defendant's argument lacks merit, as

the evidence supports the trial court's determination that

Officer Davis had probable cause to arrest defendant.

In its order denying defendant's motion to suppress for

lack of probable cause, the trial court noted that when Officer

Davis stopped defendant at the checkpoint, he immediately noticed that defendant had "bloodshot eyes and a moderate odor of alcohol about his breath." Defendant admitted to "drinking a couple of beers earlier" and had "stopped drinking about an hour" prior to being stopped at the checkpoint. Two alco-sensor tests administered to defendant yielded positive results, and defendant exhibited clues indicating impairment on three field sobriety tests. Officer Davis determined that defendant was "under the influence of some impairing substance," regardless of the positive alco-sensor test results. The trial court further acknowledged Officer Davis' twenty-two years' experience as a police officer.

Defendant argues that because he did not exhibit signs of intoxication such as slurred speech, glassy eyes, or physical instability, there was insufficient probable cause for Officer Davis to arrest defendant for driving while impaired. We are not persuaded; as this Court has held, the odor of alcohol on a defendant's breath, coupled with a positive alco-sensor result, is sufficient for probable cause to arrest a defendant for driving while impaired. *See State v. Rogers*, 124 N.C. App. 364, 369—70, 477 S.E.2d 221, 224 (1996); *see also State v. Fuller*, 176 N.C. App. 104, 109, 626 S.E.2d 655, 658 (2006) ("The results

of an alcohol screening test may be used by an officer to determine if there are reasonable grounds to believe that a driver has committed an implied-consent offense[.]" (citations and quotation omitted)). Here, Officer Davis noted that defendant had bloodshot eyes, emitted an odor of alcohol, exhibited clues as to intoxication on three field sobriety tests, and gave positive results on two alco-sensor tests. As such, there was sufficient probable cause for Officer Davis to arrest defendant for driving while impaired.

*III.*

Defendant next argues that the trial court abused its discretion in denying his request to redact evidence of the alco-sensor test. Specifically, defendant contends the trial court's admission of the alco-sensor test's numerical results was an abuse of discretion, thus entitling him to a new trial. We disagree.

On appellate review, "[a] trial court may be reversed for abuse of discretion only upon a showing that its actions are manifestly unsupported by reason." *State v. Rasmussen*, 158 N.C. App. 544, 555, 582 S.E.2d 44, 53 (2003) (citation omitted).

Although the results of a defendant's alco-sensor test are not admissible as substantive evidence, *State v. Bartlett*, 130

N.C. App. 79, 82, 502 S.E.2d 53, 55 (1998), an officer who arrests a defendant for driving while impaired may testify that a defendant's alco-sensor test indicated the presence of alcohol. *Fuller*, 176 N.C. App. at 109, 626 S.E.2d at 658.

Defendant contends the trial court abused its discretion during the pre-trial hearing by allowing into evidence the numerical results of defendant's alco-sensor test. During the pre-trial hearing, the results of the alco-sensor test were offered to the trial court as part of Officer Davis's paperwork which was submitted to the magistrate; the paperwork was proffered by the State to show that Officer Davis had probable cause to arrest defendant for driving while impaired. Specifically, Officer Davis' arrest affidavit described how he encountered defendant, his observations of defendant, defendant's performance on the field sobriety tests, and the numerical results of defendant's alco-sensor test. This admission of the actual numerical results of defendant's alco-sensor test was error, as only "a positive or negative result on an alcohol screen test" may be admissible in court. *See* N.C. Gen. Stat. § 20-16.3 (2013) ("The fact that a driver showed a positive or negative result on an alcohol screening test, but

not the actual alcohol concentration result . . . is admissible in a court[.]").

However, while we note the technical violation of the statute, we do not agree with defendant that this violation entitles him to a new trial. "A mistrial is appropriate only when there are such serious improprieties as would make it impossible to attain a fair and impartial verdict under the law." *State v. Blackstock*, 314 N.C. 232, 243—44, 333 S.E.2d 245, 252 (1985) (citation omitted).

Here, the numerical results of defendant's alco-sensor test were admitted into evidence *only* during the trial court's pre-trial hearing on defendant's motions to suppress and dismiss; the results were never introduced into evidence before the jury. Moreover, even without the results of the alco-sensor test, the State presented sufficient evidence, via the testimony of Officer Davis, to survive defendant's motion to dismiss for lack of probable cause. As such, despite committing a technical statutory violation by admitting the numerical results of defendant's alco-sensor test, the trial court did not err in denying defendant's motion to dismiss for lack of probable cause.

Further, when Officer Davis testified at trial before the jury as to the circumstances under which he encountered and eventually arrested defendant for driving while impaired, Officer Davis did not discuss defendant's alco-sensor test other than to state that defendant was administered a preliminary breath test along with field sobriety tests as part of Officer Davis' investigation. When asked at trial about how he came to form an opinion as to defendant's state of being on the evening of 21 October 2010, Officer Davis did not mention the alco-sensor test at all:

> Based on my conversation with [defendant], with the physical observations of [defendant] when I was talking to him at the car, based on [defendant's] standardized field sobriety tests, I did form the conclusion or the opinion that [defendant] had consumed a sufficient amount of some impairing substance so as to appreciably impair his mental and/or physical faculties.

Indeed, despite defendant's contentions to the contrary, the actual numerical results of his alco-sensor test were never admitted into evidence at trial before the jury. Therefore, because this evidence was never admitted before the jury, it could not and did not cause defendant to receive an unfair verdict that would entitle him to a new trial. Defendant's argument is therefore overruled.

*IV.*

Finally, defendant contends the trial court erred in denying his motion to suppress evidence resulting from the checkpoint.  We disagree.

> When considering a challenge to a checkpoint, the reviewing court must undertake a two-part inquiry to determine whether the checkpoint meets constitutional requirements.  First, the court must determine the primary programmatic purpose of the checkpoint. . . .
>
> Second, if a court finds that police had a legitimate primary programmatic purpose for conducting a checkpoint . . . [the court] must judge its reasonableness, hence, its constitutionality, on the basis of the individual circumstances.

*State v. Veazey*, 191 N.C. App. 181, 185–86, 662 S.E.2d 683, 686–87 (2008) (citations and quotations omitted).

Defendant argues the trial court erred in denying his motion to suppress evidence resulting from the checkpoint because the checkpoint lacked an acceptable primary purpose and was, therefore, unconstitutional.  In its order denying defendant's motion to suppress, the trial court made the following findings of fact:

> The Court considered all evidence presented, as well as the arguments and contentions of counsel, and makes the following findings of fact by a preponderance of the evidence:

1. The Charlotte Mecklenburg Police Department, under supervision of Sgt. David Sloan, set up a DWI check point near [the] 7200 block of Providence Road between 11pm October 21, 2010 and 3am October 22, 2010.

2. Sgt. Sloan chose the location because over 30 traffic fatalities had occurred in the vicinity since 2006, with about half of those involving impaired driving.

3. The area is near the Arboretum Shopping Center, which houses several restaurants and other businesses which serve or sell alcohol.

4. The check point was set up in compliance with NCGS 20-16.3A: there was a written plan; Sgt. Sloan briefed the 25 officers from 6 different agencies who were operating the checkpoint; every vehicle was to be stopped and was stopped; signs notifying approaching motorists of a DWI check point ahead were placed approximately 200 yards from [the] check point; [and] non-impaired drivers were only delayed about 15 seconds each.

The trial court then concluded that the checkpoint was proper and denied defendant's motion to suppress.

Defendant contends the trial court erred in denying his motion to suppress because the State failed to meet its burden of demonstrating the checkpoint was set-up for anything other than the improper purpose of general crime detection. Defendant's argument lacks merit, as during the pre-trial hearing on defendant's motion to suppress, the State presented

testimony by Sergeant Sloan regarding the checkpoint. Sergeant Sloan testified that the checkpoint was administered according to a written plan, and that the date for the checkpoint had been selected almost a year prior to that date based on when the Blood Alcohol Testing mobile lab would be available. Sergeant Sloan further testified that the location of the checkpoint, in the 7200 block of Providence Road, was chosen because of the statistically high number of impaired driving offenses and fatalities that had occurred in the Providence Road and Highway 55 corridor. Further, Sergeant Sloan stated that the main purpose of the checkpoint was to check for DWIs.

We agree with the trial court's findings that the checkpoint was conducted for a legitimate primary purpose, as the record indicates the checkpoint was established, pursuant to N.C. Gen. Stat. § 20-16.3, to check all passing drivers for DWI violations. See N.C.G.S. § 20-16.3 (2013) (permitting law enforcement agencies to set-up DWI checkpoints provided such checkpoints are administered according to established, written plans, are well-marked for drivers, and detain all passing drivers only to the extent necessary to determine if reasonable suspicion exists that a driver has committed a DWI violation).

Defendant further contends the trial court erred in denying

his motion to suppress because the checkpoint was unreasonable and therefore unconstitutional. After finding a legitimate programmatic purpose, the trial court must determine whether the roadblock was reasonable and, thus, constitutional. "To determine whether a seizure at a checkpoint is reasonable requires a balancing of the public's interest and an individual's privacy interest." *State v. Rose*, 170 N.C. App. 284, 293, 612 S.E.2d 336, 342 (2005) (citation omitted). "In order to make this determination, this Court has required application of the three-prong test set out by the United States Supreme Court in *Brown v. Texas*, 443 U.S. 47, 50, 61 L. Ed. 2d 357, 361, 99 S. Ct. 2637, 2640 (1979)." *State v. Jarrett*, 203 N.C. App. 675, 679, 692 S.E.2d 420, 424–25 (2010) (citation omitted). "Under *Brown*, the trial court must consider [1] the gravity of the public concerns served by the seizure[;] [2] the degree to which the seizure advances the public interest[;] and [3] the severity of the interference with individual liberty." *Id.* at 679, 692 S.E.2d at 425 (citation and quotation omitted).

"The first *Brown* factor — the gravity of the public concerns served by the seizure — analyzes the importance of the purpose of the checkpoint. This factor is addressed by first identifying the primary programmatic purpose . . . and then

assessing the importance of the particular stop to the public." *Rose*, 170 N.C. App. at 294, 612 S.E.2d at 342 (citation omitted).

Here, the State presented evidence that the checkpoint was intended to screen all passing drivers for DWI violations. When Officer Davis stopped defendant at the checkpoint, Officer Davis noticed defendant had red, bloodshot eyes and emitted a "moderate odor of alcohol." When Officer Davis asked defendant if defendant had been drinking that evening, defendant responded that he had consumed several beers. Officer Davis then asked defendant to take an alco-sensor test and perform several field sobriety tests. As such, the first *Brown* factor was met. *See State v. Kostick*, ___ N.C. App. ___, ___, 755 S.E.2d 411, 420 (2014) (finding the first *Brown* factor was met where an officer stopped the defendant at a checkpoint and noticed the defendant had red, bloodshot eyes, emitted an odor of alcohol, and admitted to drinking that evening); *Veazey*, 191 N.C. App. at 191, 662 S.E.2d at 690 ("Both the United States Supreme Court as well as our Courts have suggested that license and registration checkpoints advance an important purpose[.]" (citation and quotation omitted)).

The second *Brown* prong examines "the degree to which the

seizure advance[s] the public interest," and requires the trial court to determine whether "[t]he police appropriately tailored their checkpoint stops to fit their primary purpose." *Veazey*, 191 N.C. App. at 191, 662 S.E.2d at 690 (citations and quotations omitted).

> Our Court has previously identified a number of non-exclusive factors that courts should consider when determining whether a checkpoint is appropriately tailored, including: whether police spontaneously decided to set up the checkpoint on a whim; whether police offered any reason why a particular road or stretch of road was chosen for the checkpoint; whether the checkpoint had a predetermined starting or ending time; and whether police offered any reason why that particular time span was selected.

*Id.* (citation omitted).

In its findings of fact, the trial court found that the checkpoint had fixed starting and ending times; the checkpoint was located in the 7200 block of Providence Road, an area located within a mile of a major shopping area where there are businesses which serve or sell alcohol; the checkpoint's location was selected based on impaired driving statistics; and the checkpoint was conducted according to a written plan, was properly marked, and was intended to stop all passing drivers to check for impaired driving violations. These findings of fact

are supported by the evidence and "indicate that the trial court considered appropriate factors to determine whether the checkpoint was sufficiently tailored to fit its primary purpose, satisfying the second *Brown* prong." *Jarrett*, 203 N.C. App. at 680—81, 692 S.E.2d at 425.

"The final *Brown* factor to be considered is the severity of the interference with individual liberty." *Id.* at 681, 692 S.E.2d at 425. "[C]ourts have consistently required restrictions on the discretion of the officers conducting the checkpoint to ensure that the intrusion on individual liberty is no greater than is necessary to achieve the checkpoint's objectives." *Veazey,* 191 N.C. App. at 192—93, 662 S.E.2d at 690—91 (citations omitted).

> Courts have previously identified a number of non-exclusive factors relevant to officer discretion and individual privacy, including: the checkpoint's potential interference with legitimate traffic[]; whether police took steps to put drivers on notice of an approaching checkpoint[]; whether the location of the checkpoint was selected by a supervising official, rather than by officers in the field[]; whether police stopped every vehicle that passed through the checkpoint, or stopped vehicles pursuant to a set pattern[]; whether drivers could see visible signs of the officers' authority[]; whether police operated the checkpoint pursuant to any oral or written guidelines[]; whether the officers were subject to any form of supervision[]; and

> whether the officers received permission
> from their supervising officer to conduct
> the checkpoint[.]

*Id.* at 193, 662 S.E.2d at 691 (citations omitted). "Our Court has held that these and other factors are not 'lynchpin[s],' but instead [are] circumstance[s] to be considered as part of the totality of the circumstances in examining the reasonableness of a checkpoint." *Id.* (citation and quotation omitted).

As previously discussed, in its findings of fact the trial court noted the following:

> 4. The check point was set up in compliance with NCGS 20-16.3A: there was a written plan; Sgt. Sloan briefed the 25 officers from 6 different agencies who were operating the checkpoint; every vehicle was to be stopped and was stopped; signs notifying approaching motorists of a DWI check point ahead were placed approximately 200 yards from [the] check point; [and] non-impaired drivers were only delayed about 15 seconds each.

Such findings meet the third factor of *Brown*, as "the totality of the circumstances in examining the reasonableness of [the] checkpoint" was examined and set forth by the trial court in its order. *See Kostick*, ___ N.C. App. at ___, 755 S.E.2d at 421 (citation omitted) (holding that where the record showed the trial court heard and weighed the evidence regarding whether a DWI checkpoint was established for a legitimate primary purpose

and the checkpoint stops were reasonable, advanced an important public interest, and were conducted pursuant to a written plan, the trial court's denial of the defendant's motion to suppress evidence of the checkpoint was affirmed). Therefore, as the trial court determined the checkpoint had a legitimate primary purpose and that the *Brown* factors were met, defendant's argument is accordingly overruled.

No error.

Judges CALABRIA and GEER concur.